[No. 8,263.   In Bank.—January 12, 1885.]

JOSEPH A. DONOHOE, Respondent, *v.* MARIPOSA LAND AND MINING COMPANY OF CALIFORNIA ET AL., Appellants.

New Trial—Insufficiency of Evidence—Findings.—When the notice of motion for a new trial designates, as a ground of the motion, the insufficiency of the evidence to justify the decision, the statement must specify the particulars in which such evidence is alleged to be insufficient. If no such specifications are made, the statement must be disregarded. The decision includes the facts found.

Corporation—Compromise of Litigation—Power of Directors—Fraud.— The directors of a corporation, acting *bona fide* and in the exercise of their best judgment, have authority to bind thei stockholders by a settlement of a pending action, although it may subsequently appear that they failed to secure the best terms to which the corporation might have been entitled. If they have full knowledge of the circumstances on which the adverse claim is based, no fraud is practiced on them. And unless they have colluded with an adverse claimant to practice a fraud upon those whom they represent, it cannot be said that they are guilty of a fraud on the grantee of thei corporation, who has agreed to assume its debts, by representing a claim arising out of the settlement or compromise to be a valid claim.

Findings—Conflict of Evidence.—In equity, as in other cases, findings of fact will not be disturbed when the evidence is conflicting.

Purchase of Real Estate—Oral Contract for—Trust.—An oral contract for the purchase of real estate to be held in trust is invalid under the statute of 1858, p. 266, § 6.

Evidence to Explain Writing.—Where the terms of a writing are unambiguous, a witness cannot testify to his understanding of its meaning.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to foreclose a mortgage upon a tract of land known as the Mariposa Estate, executed to the plaintiff on August 2, 1875, to secure the payment of six promissory notes made by the defendant, the Mariposa Land and Mining Company of California. The defendants pleaded payment of two of the notes, and that all of the notes were executed by the defendant under a mistake of fact, and in fraud of defendant, and were without consideration. The further facts are sufficiently stated in the opinion of the court.

*S. Heydenfelt, Jr., J. W. Brumagim, Gray & Davenport, McAllister & Bergin,* and *Winans, Belknap & Godoy,* for Appellants.

*Doyle, Barber & Scripture,* for Respondent.

McKINSTRY, J.—The court below found that each of the two actions—the one being the action instituted by Eugene Kelly, on the 3d of October, 1871, in the name of C. D. O'Sullivan, as plaintiff, against the Mariposa Company and the trustees, in which the injunction was issued ; and the other brought by the Mariposa Land and Mining Company (of New York) against Kelly, the plaintiff herein, the nominal purchasers at the tax sales, John W. Brumagim and others, on the 19th day of February, 1871—was commenced and prosecuted in good faith, and that, before the time of the settlement and compromise of the 29th of January, 1872, each of said parties litigant and interested, including the Mariposa Land and Mining Company, the Mariposa Company, and the trustees of the Mariposa Estate, had notice of all the matters and things alleged in the pleadings in this action which occurred before the 29th of January, 1872 ; and on that day the said parties, having full notice, as aforesaid, executed and delivered to each other the agreement, in writing, of that date.

The foregoing finding is to the effect that the Mariposa Land and Mining Company, and the other parties to the pending litigation, entered into the agreement of the 29th of January, 1872, with full knowledge of the transactions averred in the pleadings herein to have occurred prior to that date.    It would be doing violence to the language employed to say the finding is that the agreement was made by Kelly on the one hand, and by John W., or Mark Brumagim, or the attorney employed by the corporation to prosecute the action, on the other, without authority from the Mariposa Land and Mining Company, or without the knowledge of that company.

The statement on motion for a new trial contains no specification of a deficiency of the evidence to support this finding, or which points to a deficiency in that regard.    When the notice of motion for a new trial designates, as a ground of the motion, the insufficiency of the evidence to justify the decision, the statement must specify the particulars in which such evidence is alleged to be insufficient.    If no such specifications as are required are made, the statement must be disregarded.    (C. C. P., § 659.)    The " decision " includes the facts found.    (C. C. P., § 633.)

The finding is to be taken, therefore, as absolutely true.

If the finding be construed as a finding that the *trustees* or directors of the Mariposa Land and Mining Company had notice of the matters alleged in the pleadings herein, as having transpired before the settlement was made, that company was bound by the settlement and agreement, unless, as matter of law, the trustees or directors had no power to settle the litigation. It cannot be contended that the directors of a corporation do not possess authority, acting in good faith and in the exercise of their best judgment, to settle a pending action, or that the settlement is not binding on their stockholders, even though it may subsequently appear that they failed to secure the best terms to which the corporation might have been entitled. If they have full knowledge of the circumstances on which the adverse claim is based, it cannot be said that any fraud is practised on *them*. And, unless they have colluded with an adverse claimant, to practice a fraud upon those whom they represent, it cannot be said that they are guilty of a fraud on the grantee of their corporation, who has agreed to assume its debts, by representing a claim arising out of the settlement or compromise to be a valid claim.

The answer does not allege fraud on the part of the trustees of the Mariposa Land and Mining Company (N. Y.), in entering into, or with reference to the contract or stipulation of the 29th of January, 1872. On the contrary, it is expressly alleged that the contract was made between Kelly and the Brumagims, and that the existence of the papers of that date " was unknown to the Mariposa Land and Mining Company, its trustees and stockholders, who had no notice thereof."

It is true, it is alleged in the answer that, by collusion between plaintiff herein and Kelly, and the trustees and officers of the Mariposa Land and Mining Company of New York, it was wrongfully admitted by that company that there was due to said plaintiff herein, on behalf of himself and said Kelly, or to Kelly, from the Mariposa Land and Mining Company of New York, *in August*, 1875, a large sum of money; that the trustees of the New York Company so wrongfully represented the fact to be to the officers of this defendant, the Mariposa Land and Mining Company of California; and the trustees of the said defendant being thus deceived, executed the notes and mortgage sued in this action.

But inasmuch as the court found (and appellants did not object to the sufficiency of the evidence on which the finding was based) that the Mariposa Land and Mining Company (N. Y.), with full knowledge of the facts alleged in the pleadings herein to have occurred prior to the 29th of January, 1872, on that day entered into a contract which recognized and provided for claims then asserted by Eugene Kelly, and there is no charge in the answer that the arrangement, compromise, and contract were entered into fraudulently by the said New York Company, or its trustees (but on the contrary, that the same was made without the knowledge of the said company, its trustees or stockholders), it must follow that no fraud was practiced by the trustees of said company, in representing that Kelly, or the plaintiff and Kelly, had valid claims against the New York Company, *such as were recognized* and were provided for in the said arrangement of the 29th of January, 1872.

Thenceforth, the parties to that agreement were at arms' length, and Kelly could not be guilty of wrong, in any legal efforts to secure an enforcement of the rights accorded to him by it.

As to such of the holders of Mariposa certificates, or of stock of the Mariposa Company, if any, as did not become stockholders in the Mariposa Land and Mining Company of New York, it may be conceded that company did not represent or bind them in the composition or settlement of the 29th of January, 1872. Such persons, if any there are, are not parties to this proceeding. It may be that the Mariposa Land and Mining Company of New York held its property subject to a claim on the part of such holders of Mariposa certificates of stock; or that, by dealing with the property of the Mariposa Company, the Mariposa Land and Mining Company of New York became involuntary trustees for such holders of Mariposa certificates, or stock in the Mariposa Company. But the Mariposa Land and Mining Company (N. Y.), claiming to own and deal with the entire estate, could not be permitted to assert that it had no power to make the compromise, because of actual or possible claims on the part of holders of Mariposa certificates, or Mariposa stock, not included among its stockholders. Nor can the defendant, the Mariposa Land and Mining Company of California, as successor in interest of the New York Company, now

urge that a fraud was committed on it by a subsequent recognition by the trustees of the New York Company of rights in Kelly, growing out of an arrangement or compromise entered into by said New York Company—or its trustees on behalf of its stockholders, whom they represented.

The statement on motion for new trial contains no specification of an insufficiency of evidence to sustain the finding, that on the 14th of November, 1872, Kelly, " at the request of the Mariposa Land and Mining Company " (N. Y.), in pursuance of the contract of the 12th of that month, released and conveyed to the said company his undivided third part of the Mariposa Estate, and released his mortgage on the two-thirds thereof. There is a specification : " There is not sufficient evidence to justify the court in finding that 75,025 shares of stock of the Mariposa Land and Mining Company delivered to Donohoe and Kelly were, on the 14th of November, 1872, or ever had been, the property of John W. Brumagim. But on the contrary, it appeared that Mark Brumagim, without the consent of said company, or the authority of its board of directors or trustees, delivered to Donohoe and Kelly, composing the firm of Eugene Kelly & Company, New York, and Donohoe, Kelly & Company, San Francisco, 75,025 shares, the majority of its whole capital stock, to be held by Donohoe and Kelly as security for two sums, to wit: $225,908 and $103,513.39, alleged to be due said Donohoe and Kelly, all of which stock the said Donohoe and Kelly received with the knowledge that it was a portion of the stock which had been issued to John W. Brumagim, to be held in trust for the purpose of carrying out a contract theretofore made, and the certificates of which had been transferred in blank by the said John W. Brumagim, and delivered to the company, for the purpose of being disposed of to raise a working capital for said company.

It is an admitted fact, that the Mariposa Land and Mining Company of New York requested Kelly to convey to it the one third, and to release his mortgage on the two-thirds of the Mariposa Estate, in pursuance of the written contract of November 12, 1872. That contract provided that Kelly should convey and release, as aforesaid, to the company, and that, simultaneously, John W. Brumagim should cause to be delivered to Kel-

ly a majority of the shares of the stock, as security for the payment of the two sums, $225,908 and $103,515.39, with interest, etc. In fact, the deed and the stock were delivered simultaneously. How, under these circumstances, the company could have requested a delivery of the deed and release "in pursuance of the contract," without at the same time approving of the substitution of the stock as security, is difficult to understand.

Nor, even if we were authorized to do so, ought we to extend a broader effect to the specification than its language imports. On defendant's theory that the New York Company and its trustees were ignorant of the agreement of the 29th of January, 1872, when that agreement was entered into, silence on their part, after they became aware of it, might be construed into evidence of acquiescence, and, in connection with the fact that they entered into possession under it, of approval. Hence defendants were willing to admit, and insisted, that the company demanded of Kelly a conveyance and release of his mortgage. But the finding of the court, that the request or demand of the company was for a conveyance and release in pursuance of the written contract of the 12th of November, and that the conveyance and release were made in pursuance of that contract, is not attacked by the specification. We must assume that there was evidence sufficient to sustain the finding unattacked, and such evidence would sustain the portion attacked.

By the contract of July 22, 1875, between Donohoe and the California Company, the sum recognized to be due Kelly from the New York Company, by the contract between Kelly, the New York Company, and the stockholders of that company, represented by Stilwell, was agreed to be paid by the California Company, and constituted part of the amount represented by the six promissory notes, to secure which the mortgages herein sought to be foreclosed were executed. The balance of the amount was made up of advances made by plaintiff, to secure the title under judgment and tax sales.

This much seems to be admitted, but the charge of defendants is, that the New York Company was not, in fact, indebted to Kelly. The contract of July 22, 1875, recites that whereas the party of the first part (Donohoe) by letter of January 23, 1875, had communicated his intention, in case he should become

the purchaser of Las Mariposas at the then impending sale, to offer to the party of the second part (the California Company) the option to purchase the same, upon certain terms in the letter mentioned; and also recites that "the terms of a compromise have been since agreed upon in New York between Eugene Kelly, the Mariposa Land and Mining Company (of New York), and Benjamin M. Stilwell, representing the stockholders thereof, in order to avail of which, and secure to the party of the second part the other advantages desired by it in the premises, it has been necessary to modify in other respects the terms and conditions of purchase suggested in said letter," etc.

The evidence tended to prove that the settlement and contract of the 22d of June were known to the California Company when it entered into the contract of the 22d of July; not only so, but that the same was a settlement of certain litigation previously pending in New York, in which the Mariposa Land and Mining Company of New York claimed and asserted that the fifty thousand shares of its stock were wrongfully in the possession of Kelly; that his sale of the twenty thousand was without authority, and all other of the alleged facts on which defendants now aver that the recognition of indebtedness by the New York Company was fraudulent. But the defendant, the Mariposa Land and Mining Company of California, cannot be relieved of its own contract, if, when it was entered into, the company both knew of the agreement of the 22d of June, 1875, and of the asserted rights of the respective parties to that agreement, in the litigation to settle which it was executed.

If the indebtedness, as security for which Kelly had held 75,-025 shares of stock, was an indebtedness of John W. Brumagim, and not of the New York Company, the California Company knew this had been asserted in an action adopted and prosecuted by the former company, and that the action had been compromised. The defense, as pleaded, in addition to that of payment of the first two notes, is that all the notes were made and executed by the said defendant under a mistake of fact, and in fraud of defendant, and were without consideration and void.

The answer alleges in substance (as summarized by appellants' counsel), that the Mariposa Land and Mining Company of California was organized to take from a New York corpora-

tion of a similar name the title to the Mariposa Estate ; that a consideration for the transfer was that the California Company should assume and pay the debts of the New York Company; that the said last four notes were given to cover an alleged indebtedness of the New York Company to Eugene Kelly, a partner of the plaintiff, and in reliance upon representations made to the defendant by or on behalf of the plaintiff; that it was a valid indebtedness of the New York Company; that in fact the said alleged debt was not a debt at all of the New York Company, but the individual debt of Mark Brumagim, one of the trustees of both the companies, to the firm of Eugene Kelly & Co., in which the plaintiff is, and was then, a partner; and that the debt was first fraudulently admitted or assumed by the New York Company, by collusion of its officers and trustees, and by the controlling vote of the said Mark Brumagim, and was then assumed by the board of trustees of the defendant under mistake of fact, and through fraud practiced upon them, and upon the defendant, by the said collusive admission or " audit " of the said claims as valid debts of the New York Company, and without consideration.

The settlement of the New York litigation of the 22d of June, 1875, was not simply an allowance or " audit" of a claim in favor of Kelly, existing when the conveyances from the New York to the California Company were made. It was what it purported to be, a *compromise*, in no way binding upon the California Company. Nor was the execution of the notes and mortgage to plaintiff merely a recognition by the California Company of a debt due to Kelly by the New York corporation, and provision for its payment, in furtherance of its covenant to pay all the debts of its grantor. Under all the circumstances, it remained for the trustees of the California Company, without admitting that the New York compromise was a just and fair one, to determine whether it was for the benefit of their company to pay, as part consideration for the conveyance to it of the title to be acquired by plaintiff, a sum equal to or greater than that which the New York Company had agreed to pay Kelly. For aught that appears, they had full knowledge of the material facts on which to determine the advisability of the action they took.

The defendant, the Mariposa Land and Mining Company, had not covenanted to pay—it was not a consideration for the conveyances of the 16th and 18th of November, 1874, that it should pay—the amount of all claims which might be subsequently allowed or " audited " by the officers or trustees of the Mariposa Land and Mining Company of New York.   The California Company promised to pay the debts of the New York Company existing when the conveyances were executed.   It was not agreed that a subsequent " allowance or audit " of a claim by the trustees of the New York Company, much less the assumption of the debt due by a third person, should be even evidence *prima facie* requiring its payment by the California Company.   It may be that positive assurances by the officers of the New York to those of the California Company, that a certain indebtedness existed when the conveyances were made, with evidence showing that the California Company's officers were ignorant of the facts connected with the alleged indebtedness, would be evidence on which a court would be justified in finding fraud.   But in the case before us, the nature of the claims asserted by Kelly, and of the counter-claims asserted by the New York Company, in the New York suits, together with the fact that a certain alleged indebtedness to Kelly was avowedly assumed by the New York Company as a settlement, and to end litigation—of all these matters the California Company was, so far as appears from the record, fully cognizant.   Liens for a large amount had already accrued, and others were about to attach, upon the lands which the deeds purported to convey. As to the creditors of the New York Company, the deeds to the California Company were ineffective; the only consideration for them (aside from the promise to pay debts) being the promise of certificates of stock representing the property conveyed.   Under these circumstances, the court below was justified in finding that the contract of the 22d July, 1875, was not made, and that the notes and mortgage subsequently given, and herein sued on, were not executed under a mistake of fact, nor obtained by fraudulent devices or misrepresentation.

But the court also found that all the averments in the answers and in the cross-complaint of the Farmers' Loan and Trust Company, to the effect that Eugene Kelly ever was the

owner of any of the notes, or of the mortgage, set out in the complaint, or, with the knowledge or assent of the plaintiff, held himself out as such, or as having the power to control the same, were untrue; also, that the transactions with the New York Company and with Mark Brumagim were the transactions of Kelly individually. There was evidence to sustain the findings. In opposition to the evidence to support the last finding, the mere fact that the credit extended to Brumagim was on the house of Eugene Kelly & Co., did not necessarily and conclusively establish that both partners of that house were parties to contracts in terms made between said Kelly and Brumagim.

The arrangement between plaintiff and the defendant, The Mariposa Land and Mining Company of California, which resulted in a purchase by the defendant and a conveyance to it, in consideration of the notes and mortgage set forth in the complaint, of the title acquired by plaintiff to the Mariposa Estate, through his purchase at sheriff's sale, and of the rights of redemptioners (a title paramount to that of the New York or California Company, or others), was one which, so far as appears from the findings or evidence, was made with plaintiff individually. If, with knowledge of all the facts, the California Company dealt with him upon the assumption that he was acting, or should be treated as acting, as to it for himself alone, it was an immaterial circumstance, not affecting his right to relief herein, that it was known that he was to account to Kelly for sums equal to those represented by some of the notes; or that the arrangement was carried out in view of the New York compromise. The defendant acquired title to the estate freed of all liens or claims except the mortgage here sought to be foreclosed (unless some indefinite claims, if any, on the part of holders of Mariposa certificates not previously provided for), which was its manifest purpose when it entered into the arrangement referred to.

In his letter of the 23d January, 1875, the plaintiff distinctly announced to the defendant his intention to purchase for his own benefit at the impending execution sale, and, in the event of his becoming the purchaser, to offer to the defendant the right to purchase the estate upon certain terms and conditions.

The court below found that plaintiff, at the special instance

and request of the said defendant—the M. L. and M. Co.—entered into the contract of July 22d, 1875. The statement for new trial contains no exception to the finding. The only parties to that contract were the plaintiff and the defendant, the California Company, and both the contract and the resolution of the Board of Trustees of the company of the same date authorizing it, provide for a purchase from plaintiff of the title to be acquired by him under the execution and tax sales.

Upon the facts the transaction need not necessarily be treated as in part a provision for the payment of an alleged debt, due from the New York Company, fraudulently audited by the trustees of that company, and by them represented to the officers of the California Company as a valid debt. It was an independent agreement made by the California Company, which there was evidence to show was made with notice of its rights, and to secure through the employment of plaintiff's money. a title which, as is therein recited, it was unable directly to obtain for itself.

There was sufficient evidence to sustain the finding that no extension of the time of payment of the notes was granted by plaintiff, or his agent. It is the settled rule here that, in equity as in other causes, findings of fact are not to be disturbed where the evidence is substantially conflicting.

It is contended by appellants, the court below erred in refusing to allow them to prove an oral agreement on the part of Kelly to purchase the Mariposa Estate at tax sales, and to hold it in trust for the benefit of the trustees and persons interested in the trust ; that other gentlemen of sufficient means were willing so to purchase ; that Kelly so agreed, in order not to have the other gentlemen do it ; that, relying on Kelly's promise, the trustees and other persons in interest, having the ability so to do, refrained from purchasing or redeeming, and suffered the sale for taxes to take place, and title thereunder to ripen, etc. The offer was to prove matters occurring prior to the agreement of January 29th, 1872, and the court properly refused to admit the testimony.

The oral contract, which defendant offered to prove, for the purchase by Kelly with his own moneys of real estate, to be held in trust, if entered into, was invalid under the statute of California. (Stats. 1858, p. 266, § 6.) But if valid, and if it

could be claimed that, by reason of their reliance on the oral promise of Kelly, the trustees failed to purchase at the tax sales, or to redeem, or to get others to purchase or redeem, and Kelly took the tax deeds charged with a trust growing out of the oral agreement, still the evidence was inadmissible. The answers do not charge the facts sought to be proved, but, on the contrary, allege that the agreement with respect to the tax sale purchases was reduced to writing, and on the 24th of December, 1870, " with the assent of said trustees," executed by Kelly and John W. Brumagim.

The court did *not* refuse to permit the defendant to prove the matters contained in their offer, appearing on pages 315, 316, and 317 of volume 3 of the transcript; but of the matters therein mentioned, refused to permit the introduction of evidence with reference to the alleged oral contract. Appellants urge, the court below erred in refusing to allow them to prove that, at the time at and before the commencement of this action, between fifty thousand and sixty thousand shares of the stock of the Mariposa Land and Mining Company of New York were surrendered to defendant, the M. L. and M. Company of California, and in exchange therefor the latter issued its stock. But if the mortgage herein sought to be foreclosed was valid when it was executed, August 9th, 1875, its validity was not affected by the circumstance that certain persons who, at that time, had the right to receive some of the stock of the California Company subsequently made the exchange.

It is further insisted that the court erred in sustaining objections to certain questions asked of the witness, Mark Brumagim, the answers to which, as is claimed, would have shown that when the settlement of June 22d, 1875, was made, Kelly knew that Vibbard and Smith, two of the directors of the New York Company, were not *bona fide* directors and stockholders therein, but were dummies, acting as the witness might direct; that he knew the two persons named, together with Jacob Brumagim, were really the nominees placed by the witness in the board of directors, under a proxy to vote Kelly's stock; and further, that Kelly insisted on the control of the stock so as to control the board of directors. As we have seen, the California Company had not agreed to pay such sum as the directors of the New

York Company should admit to be due from the last named company to Kelly. There was evidence going to show it had knowledge of the nature of the claims of Kelly, as asserted by him, and the opposing claims asserted by the New York Company, respectively, and of the compromise of the New York litigation, and yet entered into the contract which resulted in the notes and mortgage herein sued. In view of the facts found, no error which could have prejudiced the defendants was committed by sustaining the objections to the questions, since the defendant, the California Company, was not justified by its covenant in relying upon, and, so far as appears, did not really rely upon, the settlement of the 22d June, 1875, as determinative of the amount for which the notes set forth in the complaint were given.

Appellants say the court erred in not permitting them to prove that Kelly knew Brumagim made the contract of September 30, 1868, for the benefit of the holders of the Mariposa certificates, and that he (Kelly) reported to the witness, Mark Brumagim, " that he had bought the property at tax sale." But these were matters which preceded the agreement of January, 1872, which settled and determined the rights of the parties to it.

The court did not err in sustaining objections to the questions to the witness, Heydenfeldt, as to his understanding of the meaning of the letter of the 23d January, 1875, and of the contract of the 22d July, same year. The letter and contract were unambiguous. For the same reason, there was no error in refusing to allow the witness, Burr, to testify with respect to the statements of Heydenfeldt as to the meaning of the letter.

The question asked the witness as to his knowledge of the contract of the 29th January, 1872, signed by him, could not have prejudiced defendants. The witness answered; " I have a very shady memory about it ; I don't think I could tell you anything about it. There was something done." The question to the witness, Burr, as to his knowledge of the indebtedness of the New York to be paid by the California Company, was immaterial. He had already testified, without objection : " I know nothing about what were the debts and liabilities of the New York Company, which the California Company had agreed to

assume and pay, only as was certified by the New York Company, and read by the President."

Judgment and order affirmed.

MORRISON, C. J., MYRICK, J., SHARPSTEIN, J., ROSS, J., McKEE, J., and THORNTON, J., concurred.