EDMUND D. CODMAN *vs.* FREDERICK C. DUMAINE
& others.

Suffolk.     January 7, 1924. — June 12, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, & WAIT, JJ.

*Corporation,* Ultra vires, Officers and agents.   *Railroad,* Loan to another corporation.   *Equity Pleading and Practice,* Bill.

The Hampden Railroad, for the construction and maintenance of which the Hampden Railroad Company was incorporated, was to be " a connecting railroad " with respect to the Boston and Maine Railroad within the meaning of those words as used in St. 1906, c. 463, Part II, § 62.

A loan of $240,000 by the Boston and Maine Railroad to Hampden Railroad Company to pay interest on debts of Hampden Railroad Company incurred during construction and before completion of its railroad was properly describable as " aid in the construction " of Hampden Railroad within the provisions of St. 1906, c. 463, Part II, § 62.

A failure by Boston and Maine Railroad to require and receive security for the loan of $240,000 to Hampden Railroad Company above described did not require the conclusion as a matter of law that the loan was not made in compliance with the statutory requirement, where it appeared from the vote of the finance committee of Boston and Maine Railroad that a further reason for the loan was that the Hampden Railroad Company had a claim for a large sum against the Boston and Maine Railroad arising from an alleged breach of contract, upon which it was threatening to bring action, and that by making the loan the bringing of such action would be postponed until thirty days after final action by the Legislature on a petition of the railroad corporations for a sale or lease of the Hampden Railroad to the Boston and Maine Railroad.

The giving up or the postponement of a law suit which is not founded on good faith, and which does violence to an enlightened sense of justice in view of the knowledge of the one making the concession, is not the relinquishment of a thing of value and does not constitute sufficient consideration for a contract; but the abandonment or postponement of an honest purpose to institute litigation believed to be well founded and not frivolous, vexatious or unlawful, although not of such character in law or fact or both as finally to commend itself to the judgment of a tribunal of last resort, is the surrender of a thing of value and is a sufficient consideration for a contract.   Per RUGG, C.J.

Averments in a bill in equity by a stockholder of the Boston and Maine Railroad against that corporation and its directors to have declared *ultra vires* and void a loan of $240,000, made by that corporation to Hampden Railroad Company in accordance with a vote of the directors, and to have the corporation reimbursed by the defendant directors in that amount, were *held* not to show conduct on the part of the defendant directors which was *ultra vires*, no bad faith having being shown; and demurrers to the bill for want of equity were sustained.

Allegations in the bill in equity above described, to the effect that the directors were advised that the claim of the Hampden Railroad Company for damages based on alleged breach of contract was not well founded in law and that there was no occasion to do anything about the Hampden Railroad, did not show bad faith on the part of the individual defendants.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 20, 1923, by the holder in various capacities of seven hundred sixty-nine shares of the capital stock of the Boston and Maine Railroad, who alleged that he brought the suit in behalf of that corporation and " for and on behalf of the interest therein of all the stockholders of the said corporation who may desire to join in said suit and become parties there-to," against Frederick C. Dumaine, Edwin Farnham Greene, Fred E. Richards, Edward P. Ricker, Morris McDonald, Howard Elliott, Charles W. Bosworth, Edward B. Winslow, Frank P. Carpenter, James D. Upham, the executors under the will of Richard Olney, the executor under the will of Lucius Tuttle, the executors under the will of James M. Prendergast, the executors under the will of Alexander Cochrane, the executors under the will of Samuel Carr, the executor under the will of George H. Prouty, and the Boston and Maine Railroad. The prayer of the bill was that a loan of $240,000 by the defendant corporation to Hampden Railroad Company be declared *ultra vires* and void and that the individual defendants account and reimburse the defendant corporation therefor.

The defendants Upham, Bosworth, Greene, Ricker and Sulloway filed individual demurrers and the defendants Dumaine, McDonald, Elliott, Winslow and Carpenter filed a joint and several demurrer. All the demurrers contained, among others, the ground of want of equity. The demurrers

were heard by *Pierce*, J., who ordered them overruled and reported the suit to the full court for determination.

*F. H. Nash*, for the defendants Dumaine, McDonald, Elliott, Winslow, Carpenter and Greene.

*C. W. Bosworth*, for the defendants Upham and Bosworth.

*C. W. Crooker*, for the plaintiff.

RUGG, C.J.   This is a suit in equity brought by a stockholder in the Boston and Maine Railroad to enforce certain liabilities which he alleges have accrued in favor of that corporation against certain of its present and former directors and which the directors and the corporation refuse to prosecute.   Suit is brought for the benefit of that corporation and on behalf of all other stockholders who may desire to become parties.   The bill was filed on April 20, 1923.   The case is before us on demurrers by the defendants.   It is alleged in the bill that the board of directors of the Boston and Maine Railroad from and after December 15, 1913, until about December 1, 1919, consisted of approximately fourteen members and since the latter date of nineteen members.   Seventeen are named as having been members on December 15, 1913.   Of these, one resigned in January, one in February, two in March, 1914, and six were not re-elected in October, 1914, leaving thereafter only seven of the old directors.   Others have died or resigned, so that only three of those who were members at the time of the alleged illegal loan to the Hampden Railroad Company, which is the foundation of the present suit, have been members of the board since 1919.

The substantive allegations in the bill are that before December 15, 1913, the Hampden Railroad Company was incorporated and partially constructed as a railroad connecting with a line of the Boston and Maine Railroad at the instigation and upon the assurance of its then president that it would hire such railroad when completed.   An agreement for lease of the Hampden Railroad when completed was signed in behalf of the Boston and Maine Railroad by its president and by the Hampden Railroad Company.   Because of a variation in route from that originally planned,

difficulties arose between the two corporations, and the public service commission refused to approve the construction cost of the Hampden Railroad or its lease to the Boston and Maine Railroad upon the terms of an agreement between the two railroads, and on December 13, 1913, the directors of the Boston and Maine Railroad voted not to ratify the lease of the Hampden Railroad as outlined by its president and embodied in an agreement signed by him, which, its committee reported, expressing an opinion of its legal department, he had no authority to make or to bind the corporation to make. The committee reported further that on strictly legal grounds there was no occasion to do anything at that time about the Hampden Railroad. The directors voted that the ratification of the lease of the Hampden Railroad signed by the president of the Boston and Maine Railroad was not warranted. At a meeting of the directors of the Boston and Maine Railroad held on December 29, 1913, it was voted (1) to give its finance committee full power to do all things necessary to protect the financial condition of the corporation " including such settlement as it may deem advisable of the Hampden matter," and (2) to join with the Hampden Railroad Corporation in a petition to the Legislature for authority either to purchase or lease that railroad as then constructed on terms to be approved by the public service commission. At a meeting of the finance committee held two days later a resolution was adopted reciting that the Hampden Railroad was about to sue the Boston and Maine Railroad for breach of contract, that the Boston and Maine Railroad, without admitting liability, proposed that the Hampden Railroad should postpone bringing suit, that the Hampden Railroad had notes aggregating $1,800,000 maturing the next day and was without money to pay the same and hence was unwilling " to postpone suit unless the Boston & Maine Railroad will loan the Hampden Railroad Corporation sufficient money to enable it to pay six months interest in advance on said outstanding notes and 10% on account of the principal, Voted, to lend the Hampden Railroad Corporation $240,000 in exchange for notes of the Hampden Railroad

Corporation if Hampden will postpone bringing suit until thirty days after final action of the Legislature of 1914 on petition, it being understood that the $240,000 shall be considered as applied to rental or as part of purchase price according to action of the Legislature." In accordance with this vote the Boston and Maine Railroad lent to the Hampden Railroad $240,000, taking therefor the note of the Hampden Railroad for that sum payable on July 1, 1914. The allegations further are that this loan was *ultra vires* the Boston and Maine Railroad, that the note has been extended and has become worthless, because of receivership of the Hampden Railroad with trifling assets as compared with its liabilities, and has become outlawed; that the legislation proposed in 1913 or 1914 for lease or purchase of the Hampden Railroad by the Boston and Maine Railroad failed of passage and there has been no lease or sale, and that the Hampden Railroad has little, if any, potential value to any other railroad, has not been completed and operated, and that it will cost a large sum of money to put the Hampden Railroad in condition to operate. The allegations are in substance and effect that this loan of $240,000 by the Boston and Maine Railroad to the Hampden Railroad was *ultra vires* the Boston and Maine Railroad and hence that the directors are liable. There is no allegation of bad faith on the part of those defendants who as directors of the Boston and Maine Railroad authorized the loan. The alleged liability is posited on *ultra vires* conduct.

There are further allegations that subsequently, July 1, 1914, action was brought by the Hampden Railroad against the Boston and Maine Railroad to recover approximately $4,400,000 for breach of contract, that a committee of the directors of the Boston and Maine Railroad reported that that corporation was under no legal liability on that alleged claim, that the directors of the Boston and Maine Railroad did not energetically defend this action but " at the instigation of and in collusion with the financial interests that promoted the Hampden Railroad and who procured the respondents to make the unlawful and fraudulent loan, advance and payment of $240,000 to the Hampden Rail-

road on December 31, 1913, herein complained of, neglected and refused to make any serious effort " to defend that action until compelled to do so by the federal railroad administration, but that the action was finally defended and resulted in exoneration of the Boston and Maine Railroad from liability. *Hampden Railroad* v. *Boston & Maine Railroad,* 233 Mass. 411. There are further allegations touching the failure of the defendants to collect from the directors the amount of the $240,000, which need not be narrated in detail.

The allegations of the bill must be taken to be true for purposes of the decision of this case. They are not to be stretched beyond their fair import. No intendment can be made in favor of the pleader.

These allegations do not establish legal liability on the part of any of the defendants. The bill rests on the foundation that the loan of $240,000 to the Hampden Railroad was *ultra vires* the Boston and Maine Railroad. It was provided by St. 1906, c. 463, Part II, § 62, in force in 1913, (reënacted in G. L. c. 160, § 69): " A railroad corporation may aid in the construction of any branch or connecting railroad within the limits of this Commonwealth . . . by taking its notes or bonds secured by mortgage or otherwise . . . ", with other limitations not here material. The Hampden Railroad was a " connecting railroad " with respect to the Boston and Maine Railroad. It was partially constructed and was in process of being completed although it never reached that stage. All that is alleged in the bill. Those facts appear in *Hampden Railroad* v. *Boston and Maine Railroad,* 233 Mass. 411. The arguments of the plaintiffs that the Hampden Railroad was never a genuine enterprise and was not a connecting line in good faith are of no relevancy because the allegations of the bill do not support them. The loan of money to pay interest on debts of the Hampden Railroad incurred during construction and before completion was rightly describable as " aid in the construction." Interest on debts during construction is commonly treated as a proper charge to construction expense. *Brunswick & Topsham Water District* v. *Maine Water Co.* 99 Maine, 371,

383.  *Montana, Wyoming & Southern Railroad* v. *Railroad Commissioners,* 198 Fed. Rep. 991, 1003.  *Shepard* v. *Northern Pacific Railway,* 184 Fed. Rep. 765, 809.  This section does not authorize a loan upon an unsecured note.  While it does not restrict the kind of security to a mortgage, the words " or otherwise " import that some security must be taken for financial aid thus authorized by one railroad to another of the same general nature or kind as a mortgage. The context implies that the Legislature intended a security of the same broad species as mortgage.  *Commonwealth* v. *Rice,* 9 Met. 253, 258.  No security was taken, on the allegations of the bill, beyond the agreement that the amount of the loan should be applied to rental or purchase price of the Hampden Railroad by the Boston and Maine Railroad according to action by the Legislature for which both railroads were petitioning.  If this stood alone it would be open to grave doubt if there was compliance with the statutory requirement.  But the vote of the finance committee recites as a further reason for the loan that the Hampden Railroad has a claim against the Boston and Maine Railroad arising from an alleged breach of contract for a large sum upon which it is threatening to bring action, and that by making the loan the bringing of such action will be postponed until thirty days after the final action by the Legislature on the petition of the railroads for sale or lease of the Hampden Railroad to the Boston and Maine Railroad.  It is not alleged in the bill that this action was false, groundless or malicious, or not threatened and finally instituted in good faith.  Such allegations hardly could be made in view of what actually appeared in this court in that action when ultimately brought here for decision. 233 Mass. 411.  The utmost extent of the allegations are that the committee of the directors of the Boston and Maine Railroad had been advised that there was no liability on the part of that corporation.  One party or the other must be defeated in most litigation.  Merely to say that it will finally be decided that one party to litigation will prevail is far from saying that the litigation is without any merit.  The giving up or the postponement of a law suit which is not founded on good

faith, and which does violence to an enlightened sense of justice in view of the knowledge of the one making the concession, is not the relinquishment of a thing of value and does not constitute sufficient consideration for a contract. But the abandonment or postponement of an honest purpose to institute litigation believed to be well founded and not frivolous, vexatious or unlawful, although not of such character in law or fact or both as finally to commend itself to the judgment of the tribunal of last resort, is the surrender of a thing of value and is a sufficient consideration for a contract. *Silver* v. *Graves*, 210 Mass. 26, 30, 31 and cases there collected. *Hale* v. *Bowler*, 215 Mass. 354. *Matthews* v. *Westborough*, 131 Mass. 521. The power of the Boston and Maine Railroad to sue and be sued carried with it as a necessary incident the power to compromise either the whole claim or to secure relief for a time from the prosecution of an action founded on the claim. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450. The forbearance to bring suit for a time is a sufficient consideration for a contract. *Boyd* v. *Freize*, 5 Gray, 553. *Pelton* v. *Baker*, 158 Mass. 349. The postponement of a genuine action of that magnitude may well have been thought at the time to have been in the interest of the Boston and Maine Railroad.

All the circumstances in combination, as shown on the face of the bill, lead to the conclusion that the conduct of those of the defendants who might be responsible for making the loan by the Boston and Maine Railroad was not *ultra vires* the former corporation.

It already has been pointed out that there are no allegations of bad faith on the part of the defendants who were directors of the Boston and Maine Railroad in voting to make the loan. There are none expressly to that effect. There are none which reach to that point by any fair intendment.

The allegations, to the effect that the directors were advised that the claim of the Hampden Railroad for damages based on alleged breach of contract was not well founded in law and that there was no occasion to do anything about the Hampden Railroad, fall far short of showing bad faith.

In the management of a business as large and complicated as that of a railroad, a claim may be thought not well founded in law or in fact and yet be pressed in good faith and with such appearance of soundness as to render wise some adjustment or delay in the presentation of the claim. The averments in this particular at most are vague and wanting in specific facts. They do not require judicial investigation. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 415 and cases there collected.

The averments of the bill do not set out any legal liability of the defendants to the Boston and Maine Railroad. *Lyman* v. *Bonney,* 118 Mass. 222. *Bartlett* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 530, 536-538.

It is not necessary to examine the other allegations in detail. When it has been determined that the original loan was not *ultra vires* the Boston and Maine Railroad, there are no allegations in the bill which can support liability on the part of any of the defendants.

> *Interlocutory decree overruling demurrers reversed.*
> *Decree to be entered sustaining demurrers.*