Louis Levine and Angelo Caruso, Jr., etc., Plaintiffs, *v.* Sosthenes Behn and Others, Defendants.

Supreme Court, Special Term, New York County, October 7, 1938.

*David L. Stehr* [*Arthur G. Warner* of counsel], for the plaintiffs.

*Guy Cary* and *Sherman & Sterling*, for the defendants.

SHIENTAG, J.  The motion is by the defendants for summary judgment dismissing the complaint.  The action is a stockholders' derivative suit against certain directors of the National City Bank of New York maintained for the benefit of the bank.  These directors are being sued because they settled a lawsuit and it is claimed that in so doing they acted negligently, in bad faith, with a reckless disregard of the merits of the action and that the settlement was a misapplication of the assets of the bank for wholly

illegal and improper purposes. The lawsuit that was settled was instituted by James P. T. O'Connor, as Comptroller of the Currency of the United States, Frederick V. Goess, as receiver of the Harriman National Bank and Trust Company, and one Henry E. Cooper, as plaintiffs, against twenty banks and trust companies comprising the New York Clearing House Association (including the National City Bank) and certain individual defendants.

The Comptroller's action, which was commenced in December, 1933, was tried in this court in April and May, 1936. It resulted in judgment for the defendants (*O'Connor* v. *Bankers Trust Co.*, 159 Misc. 920), which judgment was unanimously affirmed without opinion by the Appellate Division (253 App. Div. 714). The Appellate Division granted the plaintiffs' motion for leave to appeal to the Court of Appeals, certifying that in its opinion a question of law was involved which ought to be determined by that court. The Court of Appeals, on July 7, 1938, unanimously and without opinion affirmed the judgment below (278 N. Y. 649).

The cause of action asserted in the Comptroller's complaint was to compel the defendant banks to perform an agreement alleged to have been made on their behalf with the Comptroller of the Currency and Henry E. Cooper, whereby in consideration (a) of the Comptroller's refraining from closing the Harriman Bank, and (b) of Cooper's accepting the presidency thereof, the defendant banks are alleged to have contracted that they would do whatever was necessary to secure payment to the depositors of the Harriman Bank of their claims in full; in other words, to guarantee the deposits of that bank.

Judgment, in the alternative, was demanded against the individual members of the Clearing House Committee of the New York Clearing House Association (including Mr. Rentschler, president of the National City Bank), on the theory that if the committee did not have authority to bind the defendant banks, the individual members, either by virtue of membership on the committee or as officers of the particular banks involved, were liable for breach of an implied warranty of their authority.

Prior to the National City Bank's settlement ten of the twenty defendant banks settled the Comptroller's action by an aggregate payment of $2,867,943. Their number included each bank which had had an officer on the Clearing House Committee, and the settlement carried with it a release of each such officer. (See 159 Misc. 920, 924, 925.)

The directors of the National City Bank did not determine to settle until April 17, 1936 (just before the trial), at which time the announcement of their decision was given wide publicity. The

settlement was contingent upon the receiver of the Harriman National Bank obtaining the approval of the United States District Court for the Southern District of New York. On April 23, 1936, an order was entered in that court approving the settlement, which was consummated five days thereafter by the payment of $725,000. This amount was the *pro rata* share of the National City Bank on the basis of the then estimated Harriman Bank deficit. By the terms of the settlement, interest, which had been demanded in the complaint, was waived. This was the same basis on which the other ten banks had made their settlement with the Federal Comptroller, and this is the settlement which is attacked in the present action.

The point is made that the plaintiffs' stock holdings are insignificant, that the National City Bank has 6,200,000 shares of its capital stock outstanding, and that one of the plaintiffs is now the record owner of a single share of stock and the other plaintiff of twenty-four shares. The insignificance of these stock holdings, however, is not a determining factor. The question is whether there is a genuine triable issue presented here. If directors of a corporation have been guilty of dereliction of duty, it makes no difference, in a representative stockholders' suit, who the nominal plaintiff is or how small h's own individual interest in the outcome may be.

The motion for summary judgment is made pursuant to that portion of rule 113 of the Rules of Civil Practice which provides: " Where an answer is served in any action setting forth a defense which is sufficient as a matter of law, where the defense is founded upon facts established *prima facie* by documentary evidence or official record, the complaint may be dismissed on motion unless the plaintiff by affidavit, or other proof, shall show such facts as may be deemed by the judge hearing the motion, sufficient to raise an issue with respect to the verity and conclusiveness of such documentary evidence or official record."

This motion presents three questions for determination:

(1) Is the defense set forth in the answers sufficient as a matter of law?

(2) Is that defense established *prima facie* by documentary evidence or official record?

(3) Have the plaintiffs shown facts sufficient to raise a triable issue with respect to the verity and conclusiveness of that documentary evidence or official record?

The defense interposed to the action is a general denial. Plaintiffs contend that the defense referred to in the paragraph of rule 113 under which this motion is brought must be an affirmative defense. To read such a limitation into the rule does violence not

alone to the language of the rule itself, but to its intent, and would do much to impair its effectiveness. (*Pross* v. *Foundation Properties, Inc.*, 158 Misc. 304, 305; *Lederer* v. *Wise Shoe Co.*, 276 N. Y. 459, 464, 465.) Rule 113 merely requires a defense which is sufficient as a matter of law. A general denial, if substantiated, is a complete defense to any action. Obviously, it is sufficient as a matter of law. (*Benedict* v. *Seymour*, 6 How. Pr. 298, 304; *Staten Island Midland R. R. Co.* v. *Hinchcliffe*, 170 N. Y. 473, 481.) No sound reason can be advanced for seeking to apply a technical and restricted definition of " defense " to the provisions of a rule of practice designed to save time and unnecessary waste and expense in disposing of actions that are entirely without merit. If the application of this paragraph of the rule was to be limited to actions where an affirmative defense has been pleaded, it would fail to give relief in the very type of case for which it was intended — that is, the unfounded suit where in the very nature of things the answer is almost invariably a general denial.

The next question is whether the defense — that is, the general denial — is founded upon facts established *prima facie* by documentary evidence or official record. There is nothing in rule 113 which specifies or limits the form or character of the documentary evidence or official record upon which the motion for summary judgment by a defendant is to be based. The language of the rule should receive a broad liberal construction in order to effectuate its beneficent purpose. The evidence on which the defendants rely to establish their defense consists of the decisions of justices who tried related cases, the various pleadings, the extracts from the minutes of the directors' meetings and many other written documents, such as letters, demands, receipts and releases. (Richardson on Evidence [4th ed.], § 614; 22 C. J. 791.) The minutes of those meetings, while not conclusive, are *prima facie* evidence of the directors' proceedings. (See *Shelby* v. *New York Steam Co.*, 121 N. Y. Supp. 619, 620; *Leonard* v. *Faber*, 52 App. Div. 495, 499; *Boardman* v. *Lake Shore R. Co.*, 84 N. Y. 157.)

The real question on this motion is whether or not there is a substantial triable issue presented or whether there is here one of those feigned, phantom issues against which the rule invoked was directed. It is well-settled law, and so conceded by the plaintiffs, that the general control and government of all affairs and transactions of a bank rest with its board of directors, that a bank has the right to sue and be sued and that as an incident to the right to sue or be sued is the power to compromise or settle suits, that the directors, acting in good faith and in the exercise of their best judgment, have the power to settle a pending action, and where

there is no fraud or collusion the determinations of the directors on matters of settlement will not be interfered with by the courts. (*Moss* v. *Averell*, 10 N. Y. 449, 455; *First National Bank* v. *National Exch. Bank*, 92 U. S. 122; *Hill* v. *Wallace*, 259 id. 44, 74; *Leslie* v. *Lorillard*, 110 N. Y. 519, 532; *Continental Ins. Co.* v. *New York & H. R. R.*, 187 id. 225; *Donohoe* v. *Mariposa Land & Mining Co.*, 66 Cal. 317; 5 P. 495; *Heinz* v. *National Bank of Commerce*, 237 Fed. 942; *Butler* v. *Butler Bros.*, 186 Minn. 144; 242 N. W. 701; *Codman* v. *Dumaine*, 249 Mass. 451; 144 N. E. 408; *Yates* v. *Cyclists' Touring Club*, 24 T. L. R. 581; *Karasik* v. *Pacific Eastern Corp.*, —— Del. Ch. ——; 180 A. 604.)

It is urged that the settlement was illegal, because a contract by one bank to guarantee the deposits of another bank would have been *ultra vires*. This contention is without merit. The National City Bank always contended that no such contract was ever made on its behalf and the complaint in this action assumes that was so. Moreover, this court held that the contract, if properly approved by the board of directors of the bank, would not have been *ultra vires*. (*O'Connor* v. *Bankers Trust Co.*, 159 Misc. 920, 932, 936.) While it is true that an affirmance by an appellate court adopts the result reached below, rather than the opinion and the conclusions of law of the trial court, the fact remains that up to the present at any rate it is the law of the Comptroller's action that the contract claimed, if properly approved, would not have been *ultra vires*.

The good faith of the directors is completely demonstrated by the minutes of their proceedings and by judicial decisions in the Comptroller's action. In that suit there were sharply contested issues of fact and difficult controverted questions of law. The Appellate Division, which unanimously affirmed the trial court, felt that the nature of the case and the questions of law presented were such that it ought to go to the Court of Appeals for determination. It is true that the Court of Appeals upheld the decision in favor of the defendants, but it is axiomatic that there is nothing more uncertain than a lawsuit and it is also obvious that regardless of how optimistic of the outcome a litigant may be, business expediency and his own best interests often dictate the wisdom of settlement.

The documentary evidence shows clearly the careful consideration that was given to this matter by the directors of the National City Bank. They acted not on impulse, but after years of study of the conflicting elements involved. They acted on the advice of able counsel. They responded to a demand made upon them by government officials. They acted in response to a statement

from the Secretary of the Treasury of the United States that prompt performance by the banks " must be regarded as not only having my entire approval but as having been specifically requested by me." How, therefore, can it be said, as urged by the plaintiffs, that the claim that was settled was without foundation and that the directors acted negligently, recklessly and from improper motives in making such settlement? The verity of the documentary evidence is not questioned and no facts or other proofs have been presented which even remotely tend to raise an issue as to its conclusiveness.

It is also urged that the settlement paid for by the bank improperly involved a discontinuance of the suit against Rentschler, its president, who was joined as an individual defendant in the Comptroller's action. In the first place, it is extremely doubtful whether the complaint in the Comptroller's suit stated a good cause of action against Rentschler individually. (See *Smith* v. *Davison*, N. Y. L. J. July 21, 1934, p. 203.) Moreover, it was held in the *O'Connor* suit that the members of the Clearing House Committee never warranted their authority to make the commitments asserted either as members of such committee or as officers of their respective banks. (*O'Connor* v. *Bankers Trust Co.*, 159 Misc. 920, 951.)

Again, it is asserted that the settlement was improvident, that it was really more than a settlement, it was a payment in full. The fact is that the settlement was the only one that could be obtained. It would have been manifestly improper for a Federal official to have settled with the National City Bank on any other basis than the terms on which he settled with the other ten banks who paid their share earlier. Moreover, a substantial amount in interest was waived and the bank was saved the expense and the cost of a long drawn out legal proceeding.

Finally, it is urged by the plaintiffs that this motion should not be entertained until they have had an opportunity to examine Mr. Rentschler and other officers or directors of the National City Bank before trial. An examination along these lines was stayed pending the determination of this motion. Ordinarily, the courts exercise the greatest liberality with respect to the allowance and the scope of examination before trial and dismiss without comment the objection so frequently interposed that such examinations are " fishing expeditions " and not sought in good faith. If ever there was a case, however, where it is clear beyond doubt that the examination is not sought in good faith, will accomplish no useful purpose, but is sought solely for the purpose of annoying and harassing the defendants, this is that case. There is nothing to be gained by an examination before trial. The suit here is

utterly without merit; there is no real substantial issue to be tried. The plaintiffs have no just claim or grievance. As this court had occasion to observe in another case, a motion by a defendant for summary judgment, " the controversy is not one of the defendant's choosing; he is forced into the legal arena. Why should he be harassed and inconvenienced, and perhaps damaged in his business and credit if it clearly appears that the plaintiff can entertain no hope of success? True, the defendant will prevail at the trial, but he will have been subjected to considerable expense by way of attorney's fees and preparation for trial, for which, under our present system, he will not be compensated by the costs imposed. What better way is there for doing away with the multiplicity of unfounded and worthless suits with which our calendars are clogged? What more effective method is there of discouraging so-called ' strike suits,' brought for the most part for their nuisance value? " (*Pross* v. *Foundation Company*, 158 Misc. 304, 308.)

Motion for summary judgment dismissing the complaint is granted. Settle order.