PAUL C. BLAIR *vs.* PAUL J. CIFRINO & others.

Suffolk.   January 7, 1969. — April 17, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & REARDON, JJ.

*Contract,* What constitutes, Consideration.

A contention by the plaintiff in a suit in equity that his withdrawal of a claim, that his bid for leasing premises of a public authority subsequently sold to defendants was the highest bid, was consideration for an alleged "Sharing Agreement" between the plaintiff and a defendant whereby the plaintiff would participate in the development of a shopping center on the premises was without merit where it appeared that at the time of the making of the alleged agreement the plaintiff had already surrendered his claim and had entered into a "Commission Agreement" with one of the defendants whereby his services were retained in connection with the proposed development if the defendants' bid was accepted and that he subsequently received sizable sums under the "Commission Agreement."   [708–709]

A letter from a developer of a proposed shopping center to a prospective participant in the development reciting, among other matters, that "this letter is intended to outline the commitment which I made to you . . . and which can be formalized in any way you wish," that "we will work out the most feasible method of making payment" of certain moneys to be earned by the prospective participant, and that "Naturally we can work up something more legal than this letter," was too indefinite to constitute a contract and was not binding on the developer. [709, 710]

BILL IN EQUITY filed in the Superior Court on June 24, 1967.

The suit was heard by *Brogna,* J.

*Jerome Gotkin (Stephen M. Honig* with him) for the plaintiff.

*Robert F. Sylvia (Phil D. Fine* with him) & *George E. Lodgen (Geoffrey D. Wyler* with him) for the defendants.

REARDON, J.   The plaintiff appeals from final decrees entered on his bill brought under G. L. c. 231A.   The record on which we act puts the problem as follows.

Blair *v.* Cifrino.

The bill alleges that bids were solicited by the trustees of the Metropolitan Transit Authority (MTA) for the purchase or other disposition of land in Dorchester, Massachusetts, and that the plaintiff submitted a bid for a fifty year lease on certain terms. The defendants, directly or through a nominee, submitted two bids to purchase the premises, one of which was accepted, to which action the plaintiff objected on the ground that his bid was more favorable to the MTA. Negotiations then commenced between the parties in this suit and after a year, on or about June 5, 1964, two written agreements were entered into, one being a "Commission Agreement" between one of the defendants, Supreme Markets, Inc. (by Paul J. Cifrino), and the plaintiff. This agreement, on the terms of which there is no debate, provided, inter alia, that the plaintiff's services would be retained for a stated fee in connection with the development of a shopping center project if the defendants' bid for the premises was accepted. The bill further alleges that a second agreement, "Sharing Agreement," was also concluded on the basis of a letter dated June 5, 1964,[1] forwarded to the

[1]                                                                "June 5, 1964

Paul C. Blair, Esq.
24 Elliot Street
Newton Highlands, Massachusetts   02161
Dear Paul:
    This letter is intended to outline the commitment which I made to you at lunch and which can be formalized in any way you wish.
    Assuming that the Fields Corner Center is developed by both of us together along the lines spelled out in today's letter we agree that you will share additionally in the development of the ⅔rds of the center not developed for the market as follows for 20 years from opening.
    (1) From the gross rental each year will be deducted a 20 year amortization factor applied to the full costs of construction including your fees, if any.
    (2) Appropriate Real Estate Taxes if any will be deducted.
    (3) Appropriate maintenance costs will be deducted.
    (4) A sum of 24,000 representing imputed land rent will be deducted.
        The Balance of Income, if any, will be considered earned by you and we will work out the most feasible method of making payment.
    As a sort of example: if the basic rents in a given year were sufficient exactly to carry the full amortization, the land rent, the taxes and upkeep, and if there should also be additional percentage rental income, then this percentage income would accrue to you.
    I trust that I have conveyed what is clearly in my mind but what is cumbersome to express. Naturally we can work up something more legal than this letter.
                                                            Yours sincerely,
                                                            PAUL CIFRINO"

plaintiff by the defendant Paul J. Cifrino, the receipt of which caused the plaintiff by letter dated June 9, 1964, to the MTA to "withdraw" from the position he took concerning his bid for a lease on the MTA premises, which were subsequently conveyed to the defendant trustees.

The defendants admit the withdrawal of the plaintiff from his position that he was the high bidder for the premises but claim he withdrew on the basis of the execution of the "Commission Agreement" and that, in any event, his claim had no status since he had been advised in writing by the MTA on April 10, 1964, that the property was not advertised for lease but for sale and could not have been leased under relevant statutes pertaining to the advertisement.[2]   In general, the defendants' claim is that relative to the "Sharing Agreement" no contract existed, and if one did it was too vague, uncertain and indefinite to be enforced.

1. We deal first with the plaintiff's statement of his intention to prove the validity of his claim that he was the highest bidder for the property and that he withdrew this claim "solely in consideration of and in reliance on the 'Sharing Agreement.'"  "It is well settled that the abandonment of a claim believed to be well founded and made in good faith and 'not frivolous, vexatious or unlawful, although not of such character in law or fact or both as finally to commend itself to the judgment of the tribunal of last resort, is the surrender of a thing of value and is a sufficient consideration for a contract.'  *Codman* v. *Dumaine,* 249 Mass. 451, 457–458."  *Higgins* v. *Gilchrist Co.* 301 Mass. 386, 390.  *Melotte* v. *Tucci,* 319 Mass. 490, 492.  That the MTA had advised the plaintiff it did not recognize his position would not of itself weaken his assertion of consideration.  However, it appears weakened by the "Commission Agreement" in which it was provided in behalf of one of the defendants, Supreme Markets, Inc., "This agreement will not take effect and will be cancelled if we are not awarded the development of the Fields Corner Center," an event

---

[2] St. 1947, c. 544, § 4.   St. 1959, c. 599.   St. 1962, c. 660.

which took place.  Not only had the plaintiff agreed to this but he had, when he brought his bill, received sizable sums of money under the terms of the "Commission Agreement." He was not thus in a posture to maintain with propriety the validity of his claim against the MTA and his determination not to press it as consideration for the "Sharing Agreement," for he had already surrendered it and could not bring it to bear on the "Sharing Agreement."

2. We thus move to consideration of the question whether the contents of the letter dated June 5, 1964, are sufficient to support an action of contract.  Much depends on whether we view this letter as complete in itself or whether it is rather an important opening phase of what might develop into protracted negotiations.  The "Sharing Agreement" is concerned with the long range development of a shopping center.  The parties were responsible and experienced persons with evident knowledge of what that entailed and with the host of details to be covered in any writing which might eventually reflect their complete understandings and respective undertakings.  The letter sets out that it "is intended" to outline the commitment which the defendant Paul J. Cifrino was willing to make.  It left to be worked out "the most feasible method of making payment" of certain moneys to be earned by the plaintiff.  The final sentence was, "Naturally we can work up something more legal than this letter."  The plaintiff was to commence sharing in the development "20 years from opening," a date not otherwise defined.  As the defendants have pointed out, "the 20 year amortization factor" to be deducted from "gross rental" was mentioned with no more definite statement of how and from what base amortization would be figured.  The letter was silent on a large number of other items which are routinely covered in contracts of the length and complexity of that upon which the parties were to embark.  Without further discussion of them, it is our view that the letter was too indefinite to be enforced as an agreement.  The parties on the exchange of the letter were in the state of "imperfect negotiation." *Rosenfield* v. *United States Trust Co.* 290 Mass.

210, 217.  *Saxon Theatre Corp. of Boston* v. *Sage*, 347 Mass. 662, 666.  See *Geo. W. Wilcox Inc.* v. *Shell Eastern Petroleum Prod. Inc.* 283 Mass. 383.  That the plaintiff so regarded the letter is discoverable in a letter which he dispatched to the defendant Paul J. Cifrino under date of June 9, 1964, in which he returned "the signed duplicate copy of the letter agreement between us dated June 5, 1964 ("The Commission Agreement"), and stated in addition, "I also acknowledge receipt of your letter of June 5, 1964, concerning the basis of our additional agreement which is to be formalized at a later date."  *Drummond* v. *Crane*, 159 Mass. 577, cited to us by the plaintiff, rests on a distinctly different set of facts.  There the terms of the agreement had been well rounded out and the formal agreement, as Mr. Justice Holmes so aptly characterized it, remained to be executed as a mere "additional wheel in the machinery."  P. 579.  In this case the machine was lacking some of its most vital parts.

3. We thus conclude that the judge was not in error in decreeing that the letter of June 5, 1964, dealing with the "Sharing Agreement" did not constitute a contract and was not contractually binding on the defendants, and that also, for the reasons assigned above, it was too vague, indefinite, and uncertain to be enforced as a contract.  Each final decree is modified by striking out paragraph 5 dismissing the bill, and as so modified is affirmed.

*So ordered.*