Kern, J.
Plaintiff, The Paper Store of Shrewsbuiy, Inc. (“Paper Store”) seeks to enforce a restrictive covenant in its lease (“Paper Store Lease”) with defendant White Ciiy Shopping Center, LP (“White City”) which owns and operates a shopping mall in Shrewsbuiy where the Paper Store leases retail space. In the Paper Store Lease, entered into between the parties in March 2002, White City agreed not to “enter into (a) a lease of space in the Shopping Center for use as a card and gift store selling primarily the kinds of products as are currently sold in Hallmark card and gift stores or stores similar to Card Smart stores . . .” Id. at §4.01.
There is no dispute that Paper City learned in the spring of 2003 that White City planned to enter into a lease with Yuecel, LLC d/b/a Dollar Forever (“Dollar”) for space in the Shopping Center directly adjacent to the Paper Store. Paper Store demanded that White City honor its obligations and promises. Paper Store informed White City that it would consider all of its options, including filing a lawsuit to enforce the restrictive use covenants of its lease if White City violated them. (Verified Complaint, ¶20.) White City contended that Dollar would not “compete” with Paper Store and “under no conditions would Dollar offer wrapping paper, cards or similar products.” (Id., ¶21.)
In April 2003, before White City entered into a lease with co-defendant Dollar, Paper Store and White City signed a letter that referenced the Paper Store Lease and “confirm[ed] [Paper Store’s] agreement that a lease of space in the Shopping Center to a so-called ‘Dollar Store’ (the ‘New Lease’) will not violate any of the terms of the [Paper Store’s] Lease if the restrictions set forth in Exhibit A to this letter is (sic) included in the New Lease.” In May 2003, when the New Lease between Dollar and White City was finalized, it contained at §4.01 the exact wording of Exhibit A.[1] “In reliance upon the promises and assurances made by White City in the April 2003 letter, the Paper Store refrained from seeking legal recourse.” (Id., ¶23.) When Dollar began selling the prohibited items, John Anderson of Paper Store approached Barrie Shore of White City and demanded that White City abide by its agreement. At some point, Shore responded he would “do what’s best for him and the shopping mall” and he “didn’t believe a little competition would hurt anyone.” (Id., ¶24)[2] It is the restrictive covenants and White City’s failure to abide by or enforce them which are the gravamen of the present case. Paper Store has asked that this court enjoin Dollar from selling products in competition with Paper Store and to enjoin White City from leasing space in the Shopping Center to Dollar unless Dollar discontinues the sale of such products. This court will enter an order at this time granting partial relief to Paper Store.
DISCUSSION
White City argues first that Exhibit A to the letter of April 2003 with its more restrictive language governing White City’s rights to lease other space in the Shopping Center (see underlined sentence in fn. 1 supra), does not serve as a modification of Paper City’s lease because there was no consideration for it. This argument fails for two reasons. First, the Paper Store lease itself, in §10.04, provides that “[t]his Lease shall not be modified except in writing, subscribed to by both parties.” (Emphasis added.) As indicated, there is no dispute that the letter was “subscribed to by both parties.” Second, while it is not required given §10.04 that there be consideration for a written and co-signed modification, Paper Store’s agreement not to consider a lease with Dollar as a violation of Paper Store’s lease with White City is an abandonment, even if only temporarily, of a legal right to pursue a remedy for such a violation. That, as a matter of law, is consideration. Blair v. Cifrone, 355 Mass. 706 (1969).
White City also argues that Paper Store is not a third-party beneficiary of the more restrictive covenant in the New Lease and therefore has no standing to enforce a breach. This argument is disingenuous. *296 The April 2003 letter explicitly reassured Paper Store not to consider White City “in violation of the Lease” if it leased other space in the Shopping Center to Dollar because it would add the language originally in the Paper Store lease and presumptively would enforce that language. While it did add the promised language, it did not enforce it. There is no dispute that Dollar, in violation of §4.01 of the New Lease, does sell “wrapping paper [and] birthday, anniversary, holiday, announcement, invitation, greeting or similar cards or communications.” As a third-parly beneficiary to the contract between White City and Dollar, Paper Store may seek redress for a breach of that contract. Rae v. Air-Speed, 386 Mass. 628 (1982).[3]
ORDER
For the foregoing reasons, Yuecel, LLC d/b/a Dollar Forever is enjoined from selling “wrapping paper or birthday, anniversary, holiday, announcement, invitation, greeting or similar cards or communications” in compliance with the restrictive covenant of its lease and this court’s order. This order is to go into effect immediately and White City Shopping Center, L.P. is to assist in the enforcement of this order pursuant to its lease with The Paper Store and this court’s order. This order shall remain in effect until further order of the court. Discovery on this limited issue may begin immediately and an evidentiaiy hearing with respect to the remaining provision of §4.01 of defendants’ lease shall be set for three months from the date of this order.

 “In no event shall [Dollar] use the Premises primarily for the sale of the kinds of products currently sold in Hallmark Card and Gift stores or stores similar to Card Smart Stores. Without limiting the generality of the foregoing, in no event shall [Dollar] use the Premises for the sale of wrapping paper or birthday, anniversary, holiday, announcement, invitation, greeting or similar cards or communications.” (Emphasis added.)

 Barrie Shore submitted an affidavit in opposition to Paper Store’s motion for a preliminary injunction but did not deny any of these allegations.

 At this time this court cannot, without an evidentiary hearing, determine if Dollar is violating the first sentence of Exhibit A (§4.01) “In no event shall [Dollar] use the Premises primarily for the sale of the kinds of products currently sold in Hallmark Card and Gift Stores of stores similar to Card Smart Stores.” At a minimum, there is ambiguity about the definition of “primarily.” Further, there will need to be a comparison of the goods sold by each of these stores, qualitatively and quantitatively.