ASSOCIATED CREDIT SERVICES, INC. *vs.* CITY OF
WORCESTER.

No. 91-P-48.

Worcester. March 18, 1992. - July 28, 1992.

Present: BROWN, KASS, & LAURENCE, JJ.

*Contract*, Requirements contract.

A contract between a city and the operator of a collection agency, provid-
ing that the agency would collect "all outstanding . . . accounts as per
the requirements and specifications" of a municipal hospital, was prop-
erly characterized as a "requirements" contract, under which the city
could determine in good faith whether its requirements called for inter-
nal rather than agency collection of particular receivables, so long as it
did not employ any other collection agency. [93-95]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 20, 1985.

The case was tried before *Elbert Tuttle*, J.

*Burton Chandler* for the plaintiff.

*Gary S. Brackett*, City Solicitor, for the defendant.

BROWN, J. In March of 1983, the city of Worcester (city)
invited bids from collection agencies for "[c]ollection of all
outstanding inpatient and Emergency Ward accounts as per
the requirements and specifications of the Worcester City
Hospital." Associated Credit Services, Inc. (Associated), was
the successful bidder and entered into a contract with the
city for a one-year period, beginning in April, 1983. The par-
ties extended the contract for a second year through April,
1985.

The relevant terms of the contract between the city and
Associated indicated that Associated was to "provide and de-
liver to the City the following materials: 'Collection of all
outstanding inpatient and Emergency Ward accounts as per
the requirements and specifications of the Worcester City

Hospital for the period April 14, 1983 through April 13, 1984.' " The contract incorporated by reference the sealed bid invitation, including the proposed specifications.[1] Nowhere in the contract is the term "requirements" defined.

In February, 1985, Associated filed suit against the city, claiming that the city had failed to turn over all outstanding accounts. The trial judge found that, in June of 1983, the city turned over approximately 2.3 million dollars in delinquent accounts to Associated. Those accounts actually covered the period 1978-1979. Collections of receivables from those accounts totalled about $63,000. There was evidence adduced at trial that the city chose to collect certain outstanding accounts on its own or to write off certain accounts rather than to send them to Associated. There also was evidence that on two or three occasions the hospital's patient accounts manager told patients to make payments directly to the hospital and to ignore requests for payment from Associated. The judge found, however, that those occurrences were minimal in terms of the volume of accounts receivable turned over to Associated.

Prior to trial, the judge ruled that the contract between the city and Associated was clear and unambiguous and that the hospital was only obligated to turn over to Associated those accounts receivable that the hospital determined met the hospital's requirements. The judge also instructed the jury to this effect. On appeal, Associated challenges the judge's interpretation of the contract and his instructions to the jury.

While we are not in complete agreement with the trial judge that the language in this contract is clear and unambiguous, we do conclude, as he did, that this agreement can best be characterized as a "requirements" contract.

The inclusion of the term "as per the requirements" is not without meaning. "It is an elementary rule in the interpreta-

---

[1]The specifications stated, in part, "Worcester City Hospital is soliciting bids for a collection agency to handle all outstanding inpatient accounts of one (1) year or more and all outstanding Emergency Ward accounts of ninety (90) days or more." The specifications also provided that the "[a]ccounts referred are estimated at one million dollars per year."

tion of contracts that whenever reasonably practicable every word shall be given effect." *Hagerty* v. *Myers*, 333 Mass. 387, 388 (1955), quoting from *Rocci* v. *Massachusetts Acc. Co.*, 222 Mass. 336, 343 (1916). See also *JRY Corp.* v. *Le-Roux*, 18 Mass. App. Ct. 153, 159-160 (1984). Although the drafting of the contract leaves much to be desired, we think that the term "as per the requirements" was intended to modify the term "all" so as to render indefinite the quantity of accounts to be referred. Nor should the word "requirement" be read as synonymous with the word "specifications," as it seems Associated would have us do. We must construe words so as to give them meaning whenever possible and not treat language as superfluous. See *Shea* v. *Bay State Gas Co.* 383 Mass. 218, 224-225 (1981).

That the parties may have chosen to leave one of the terms of the contract indefinite does not render it unenforceable. See *Burgess Sulphite Fibre Co.* v. *Broomfield*, 180 Mass. 283, 286 (1902). See also Farnsworth, Contracts § 7.17, at 528 (1982); 3 Williston, Contracts § 7.12 (4th ed. 1992). Generally, the detriment in a requirements contract is the agreement of one party (often, but not always, a purchaser) to deal exclusively with the other contracting party. *Neofotistos* v. *Harvard Brewing Co.*, 341 Mass. 684, 686 (1961). See Williston, *supra* at 200. Here, the city could have chosen not to send any accounts receivable to Associated, so long as it determined its requirements in good faith. *Royal Paper Box Co.* v. *E.R. Apt Shoe Co.*, 290 Mass. 207, 210 (1935). *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 124 (1974). What the city could not do was to use other collection agencies to do the work it contracted with Associated to do. See *Brodsky* v. *George H. Morrill Co.*, 237 Mass. 86, 88 (1921); *Neofotistos* v. *Harvard Brewing Co.*, *supra*. There is no evidence in the record that the city was in breach of its agreement in this respect. Nor is there any evidence that the city acted unreasonably in determining when its requirements called for internal rather than agency collection of particular receivables or oth-

erwise failed to meet its good faith obligations under the contract.

In sum, we conclude that nothing in the agreement prevented the city from collecting certain accounts on its own or from deciding to write off certain accounts that it chose not to collect.

*Judgment affirmed.*