# United States Court of Appeals

## For the First Circuit

No. 03-2111

ROGER NEUHOFF AND LOUISE NEUHOFF,

Plaintiffs, Appellants,

v.

MARVIN LUMBER AND CEDAR COMPANY; AND
MARVIN WINDOWS OF TENNESSEE, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,
Lipez, Circuit Judge,
and Lisi,* District Judge.

Robert L. Rossi, with whom Odin P. Anderson, was on brief, for appellants.
Thomas H. Boyd, with whom Tiffany A. Blofield, Winthrop & Weinstine, P.A., Scott W. Wynn and Law Office of Scott W. Wynn, were on brief, for appellees.

June 7, 2004

---

* Of the District of Rhode Island, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-appellants, Roger and Louise Neuhoff (hereinafter jointly referred to as "the Neuhoffs") brought a diversity action against defendants-appellees Marvin Lumber & Cedar Company and Marvin Windows of Tennessee, Inc. (hereinafter jointly referred to as "Marvin") for breach of an oral contract, breach of implied warranty, violation of Mass. Gen. Laws ch. 93A, and promissory estoppel.  The district court granted Marvin's motion for summary judgment on all four claims.  We conclude that the district court appropriately granted summary judgment on the first three claims, but inappropriately granted summary judgment on the promissory estoppel claim.  We, therefore, affirm in part and reverse in part.

## I.  Background

In 1991, the Neuhoffs purchased and installed sixty windows manufactured by Marvin.  In 1994, the Neuhoffs noticed that many of the windows were decaying and notified Simon Hickman, the contractor who installed the windows, of the decay.

The parties disagree as to when Marvin was notified of the decay.  The Neuhoffs contend that Marvin was notified in 1994 or early 1995 when Marvin's area distributor came to examine the windows.  Marvin contends that it did not learn of the decay until late 1997 when the area distributor contacted Marvin regarding the decay.

In 1998, Marvin sent Roy Holthusen to inspect the windows. The inspection showed that 56 windows had either "obvious decay" or "incipient decay." In March 1998, Marvin sent the Neuhoffs a letter promising to replace 33 windows for free. Several weeks later, after inquiring about the remaining windows, the Neuhoffs claim that Marvin's agent, Greg Muirhead, orally informed them that the remaining windows would be replaced for free, but that Marvin could not replace them yet due to production problems. In 1999, Marvin replaced 33 of the windows that were in the most advanced state of decay.

In June 2000, the Neuhoffs contacted Marvin again because the windows that had not been replaced had reached an advanced state of decay. Marvin sent another inspector to the Neuhoffs' home. This inspector concluded that 21 windows, including four of the newly installed windows, had obvious decay. In January 2001, Marvin informed the Neuhoffs that their windows would not be replaced for free, but that the Neuhoffs could purchase replacement windows at a 32% discount. The Neuhoffs filed suit in July 2001.

## II. **Standard of Review**

We review summary judgment decisions de novo, viewing the facts in the light most favorable to the nonmoving party. GTE Wireless, Inc. v. Cellexis Int'l, Inc., 341 F.3d 1, 4 (1st Cir. 2003). Summary judgment is inappropriate if there is a genuine

issue as to any material fact.  Id.  It is undisputed that Massachusetts substantive law controls.

### III.  **Analysis**

**A.  Breach of oral contract**

The Neuhoffs allege that Marvin breached an oral contract to provide replacement windows for free.  The oral contract was allegedly made in March 1998 when Greg Muirhead informed the Neuhoffs that their decaying windows would be replaced once Marvin's production problems were fixed and the windows reached a more advanced stage of decay.

The district court held that there was not a breach of an oral contract because the promise to replace the defective windows constituted a remedy, not a new contract.  See Neuhoff v. Marvin Lumber & Cedar Co., 2003 U.S. Dist. LEXIS 12278, at *4 (D. Mass. Jul. 16, 2003) (citing New England Power Co. v. Riley Stoker Corp., 477 N.E.2d 1054, 1058 (Mass. App. Ct. 1985)).  As a result, the district court granted Marvin's summary judgment motion on this claim.  Although we disagree with the district court's reasoning, we do not disagree with the result.

The district court's reliance on New England Power and the cases cited therein was mistaken for several reasons.  First, in New England Power, the promises to repair were viewed as remedies "rather than as an independent or separate warranty" because the warranty and the promise to repair were included in the same

-4-

contract.  New England Power, 477 N.E.2d at 1058.  The logic behind New England Power is that a promise to repair does not create a contract independent from the warranty because if it did, then "limitations periods could be extended for virtually infinite time." Id.  In this case, however, the initial contract was executed in 1991.  The promise to repair did not allegedly occur until 1998 and was not a part of the original contract or warranty in effect. Marvin went to great lengths to emphasize that the original contract warranty had expired and the ten year warranty was inapplicable. Thus, the promise to repair was independent of the warranties and could, therefore, be breached.

Second, by applying New England Power, the district court confuses a "promise to repair warranty" from a promise to repair that is made after a product's defects are known.  A "promise to repair warranty" refers to a type of warranty that stipulates the remedy to be invoked if the product purchased becomes faulty.  See Standard Alliance Indus., Inc. v. Black Clawson Co., 587 F.2d 813, 818 n.10 (6th Cir. 1978).  If the promisor does not abide by the promise to repair, then the promisee has a cause of action for the underlying breach of warranty for the defective product.  New England Power, 477 N.E.2d at 1058.  In this case, the promise to repair made by Marvin was not the type of promise that stipulates the remedy to be invoked in case of a defect, rather it was an independent promise addressing a known defect.

Nonetheless, the Neuhoffs' breach of contract claim fails because Marvin's alleged promise to repair lacked consideration. See Geffon v. Micrion Corp., 249 F.3d 29, 35 (1st Cir. 2001) (court of appeals may affirm a grant of summary judgment on any ground supported by the record). A contract must have consideration to be enforceable and "[i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." See Hinchey v. NYNEX Corp., 144 F.3d 134, 142 (1st Cir. 1998) (quotations and citations omitted).

The Neuhoffs allege three types of consideration: (1) forbearance of their legal claims, (2) the time and labor expended assisting Marvin in connection with Marvin's promise to replace the defective windows, and (3) the benefit Marvin received to their reputation by agreeing to replace the windows.

It is well-settled that "abandonment of a claim believed to be well founded . . . is the surrender of a thing of value and is a sufficient consideration for a contract." Blair v. Cifrino, 247 N.E.2d 373, 375 (Mass. 1969) (quotations and citations omitted). The claim need not be "of such character in law or fact or both as finally to commend itself to the judgment of the tribunal of last resort," rather it need only be "well founded and made in good faith and not frivolous, vexatious or unlawful." Id. (internal quotations and citations omitted). But, "[m]ere forbearance to sue a claim,

-6-

without any promise either in express terms or by fair implication from all of the circumstances, does not form sufficient consideration . . . ." Merrimac Chem. Co. v. Moore, 181 N.E. 219, 222 (Mass. 1932). It is undisputed that the Neuhoffs never expressed their willingness to forbear suit before or after the promise to replace the defective windows was made. Nonetheless, the Neuhoffs argue that their willingness to forbear suit could be implied. An "agreement to forbear to sue may be implied when the circumstances are such as to lead to the reasonable conclusion that the . . . thing of value was given to induce the [other party] to forbear." Id. The record shows that the alleged promise to replace all of the windows was not given to induce the Neuhoffs to relinquish a claim against Marvin. Thus, the Neuhoffs' claims of forbearance is not sufficient for consideration since such forbearance was neither express nor could be found by fair implication from all the circumstances.

The Neuhoffs also claim that the time and labor expended assisting Marvin in connection with Marvin's promise to replace the defective windows was consideration. Actions can constitute consideration when a promisee gives "up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing." Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth., 255 N.E.2d 793, 795 (Mass. 1970)

-7-

(internal citation omitted). The record contains scant evidence indicating any time or labor expended assisting Marvin in connection with Muirhead's promise to replace the remaining defective windows. Rather, the record demonstrates that the actions taken by the Neuhoffs were a result of Muirhead's letter stating that Marvin would replace the first 33 windows. Pursuant to Marvin's letter, for example, the Neuhoffs obtained construction bids, but only for the first 33 windows.

The only effort expended by the Neuhoffs that related specifically to Muirhead's alleged oral promise to replace the remaining defective windows was effort relating to allowing a second inspector to view the defective windows. This action was taken as a result of the Neuhoffs' agent contacting Marvin in 2000 complaining of further window deterioration. It was not an action that could serve as consideration for Muirhead's oral promise made years earlier. Further, any actions taken by the Neuhoffs were actions that they would have taken regardless of the alleged promise. Since the Neuhoffs did not do anything which they were privileged not to do in relation to Muirhead's promise, the Neuhoffs' actions do not constitute consideration.

The Neuhoffs lastly claim that the benefit to Marvin's reputation by agreeing to replace the windows was consideration for the promise. The allegation that Marvin wanted to improve its reputation or that the alleged promise did improve its reputation

is not supported by the record. Regardless, not every benefit is consideration. See 2 A. Corbin, Corbin on Contracts § 5.9 (J.M. Perillo & H.H. Bender eds., rev. ed. 1995) (stating that the joy a grandfather receives in promising to give a child money each week is not consideration for the promise to give him money). We cannot conclude, based on the record, that a hypothetical and tangential benefit to Marvin's reputation is sufficient consideration to make Marvin's statement a binding contract.

As a result, the Neuhoffs' breach of contract claim fails because Marvin's alleged promise to replace the remaining defective windows lacked consideration.

## B. Promissory estoppel

To prove a claim of promissory estoppel under Massachusetts law, "a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (citing Loranger Const. Corp. v. E. F. Hauserman Co., 374 N.E.2d 306, 308 (Mass. App. Ct. 1978)).[1]

_____

[1] Despite adopting what is commonly known as promissory estoppel as part of its jurisprudence, Massachusetts eschews the label "promissory estoppel." See Loranger Constr. Corp. v. E. F. Hauserman Co., 384 N.E.2d 176, 179 (Mass. 1979) (holding that "[w]hen a promise is enforceable in whole or in part by virtue of

-9-

Viewing the facts in the light most favorable to the Neuhoffs, it is clear from the record that Marvin's agent, Greg Muirhead, promised to replace all of the decaying windows.[2]  The district court believed, however, that any promise to the Neuhoffs was ambiguous and therefore could not support a claim for promissory estoppel.  We disagree.

The traditional theory of promissory estoppel differentiates between a promise, an offer, and a bargain.  See 3 Corbin, Corbin on Contracts § 8.9.  Courts applying promissory estoppel doctrine sometimes confuse an offer with a promise by requiring that a promise be "clear, definite and unambiguous."  Id. Massachusetts courts, however, use the terms "promise" and "offer" interchangeably.  See R.I. Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995).  As a result, "an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration."  Id.

According to contract law, "[i]t is not required that all terms of [an] agreement be precisely specified, and the presence of

_____

reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration.").

[2]  Although not affecting our summary judgment analysis, it is interesting to note that Mr. Muirhead made this same alleged promise to other homeowners.  Cf. Coady v. Marvin Lumber & Cedar Co., 167 F. Supp. 2d. 166, 168 (D. Mass. 2001).

-10-

undefined or unspecified terms will not necessarily preclude the formation of a binding contract." Situation Mgmt. Sys. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000). The fact that "the parties may have chosen to leave one of the terms of the contract indefinite does not render it unenforceable." Associated Credit Servs., Inc. v. City of Worcester, 596 N.E.2d 388, 389 (Mass. 1992). These provisions of contract law apply equally to promissory estoppel, considering that in Massachusetts what is elsewhere called promissory estoppel is nothing but a contract absent consideration. See Loranger Constr. Corp., 384 N.E.2d at 179.

Muirhead informed the Neuhoffs that the Marvin factory was experiencing a severe backlog due to the number of defective windows they had to replace. Thus, Muirhead informed the Neuhoffs that Marvin would first replace the most defective windows and would then replace the remaining windows "in the near future . . . [once] their [backlog] problem had abated and [once] they would be able to get back to production standards." Muirhead also informed the Neuhoffs that Marvin was closing down one of their factories for a month to take care of the defective window problem.

Muirhead's statements contain a time frame for when the remaining windows would be replaced and details regarding which windows would be replaced -- namely, the deteriorating windows not replaced in the first batch. Such a promise contains enough essential terms so as not to be ambiguous.

Since a promise was made, we next must analyze if a promisor making such a promise should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and if the promise did induce such action or forbearance. See Carroll, 294 F.3d at 242. We believe there is a genuine issue of material fact on this issue. See Cataldo Ambulance Serv. v. City of Chelsea, 688 N.E.2d 959, 962 (Mass. 1998) (stating that the "question whether a party's reliance on a promise by another is reasonable is often a question of fact"). The Neuhoffs were promised that their remaining defective windows would be replaced. Such a promise coincided with Marvin's policy and practice of replacing defective windows. We, therefore, believe that Muirhead could have reasonably expected the Neuhoffs to rely on such a promise.

We are unpersuaded by the argument that the Neuhoffs could not reasonably rely on Muirhead's promise because other written documents did not contain such a promise. But cf. Trent Partners & Assocs., Inc. v. Digital Equip. Corp., 120 F. Supp. 2d 84, 105 (D. Mass. 1999) (holding that reliance is unreasonable when a representation is in direct contradiction of a written contract). In this case, no written communication stated that the remaining windows would not be replaced. The only communications involved the replacement of the first batch of windows and verification that the replacement of the first batch was 100% complete. Such written

-12-

documents do not contradict the promise to replace the remaining windows.

As stated earlier, in addition to a promisor's reasonably expecting the promisee to act or to forbear based on the promise, a promissory estoppel claim also requires a promisee to rely on the promise. See Hinchey, 144 F.3d at 143. In this case, it is clear that the Neuhoffs relied on Marvin's promise, and they did so to their detriment. The record shows, for example, that as a result of Muirhead's promise to replace some of the windows immediately and the others at a later time, the Neuhoffs only obtained contractors to bid on replacing the first batch of windows. But for Muirhead's promise to replace the remaining windows at a later date, the Neuhoffs might have obtained a bid for the entire project. The Neuhoffs may have suffered economic damages because replacing the windows in two stages may have been more expensive than replacing all of the windows at once.

We find it sufficient to conclude that there is a question of fact regarding whether the Neuhoffs relied on Marvin's promise to their detriment and leave it to the district court and to the jury to determine the extent of the damage that resulted from the promise.

**C. Breach of implied warranty**

In 1998 and 1999, Marvin replaced 33 windows in the Neuhoffs' home free of charge. By 2000, four of the replacement

-13-

windows had rotted.  The Neuhoffs contend that these windows should be replaced because they came with implied warranties.

Article 2 of the U.C.C. applies to all "transactions in goods."  See Mass. Gen. Laws ch. 106, § 2-102.  Typically, the U.C.C. only implies warranties in connection with goods that are involved in a "sale."  See Mass. Gen. Laws ch. 106, § 2-314.  In contrast, gifts do not receive implied warranties under Article 2. See Mason v. General Motors Corp., 490 N.E.2d 437, 440 (Mass. 1986) (stating "that a warranty of merchantability is implied in two situations: (1) when title to goods passes for a price, and (2) when a contract is made for the future passing of title to goods for a price.").

The question in this case is whether providing free replacement windows is more akin to a sale or to a gift.  We believe that the replacement windows are more akin to a gift and that thus there was no implied warranty on the windows.

Some courts have held that a good that is given for free can be a "sale."  See, e.g., E.I. du Pont De Nemours & Co., Inc. v. Kaufman & Chernick, Inc., 148 N.E.2d 634, 636 (Mass. 1958)(free anti-freeze with purchase of tires is a sale); Levondosky v. Marina Assoc., 731 F. Supp. 1210, 1213 (D.N.J. 1990) (complimentary drinks with purchase of chips is a sale).  Such holdings, however, were made in cases where there was a "combined sale of both [a free good] and [a purchased good] for a single price." E.I. du Pont De Nemours,

148 N.E.2d at 636. In such a situation, the free good is provided in a package with the paid for good. In the Neuhoffs' situation, the replacement windows were not coupled with any other transaction. They were provided in 1998, seven years after any sale between the Neuhoffs and Marvin took place. Thus, the replacement windows do not receive the implied warranty protection afforded by Massachusetts law.

## D.  Mass. Gen. Laws ch. 93A

The district court concluded that any claim under chapter 93A was time-barred because the four year statute of limitations expired before this suit commenced. The Neuhoffs contend, however, that their chapter 93A claim is not time-barred since their chapter 93A claim is based on Marvin's actions and empty promises between 1998 and 2001. We conclude that the Neuhoffs' chapter 93A claim is time-barred.

Pursuant to chapter 93A, a claimant seeking relief must send a written demand "reasonably describing the unfair or deceptive act or practice relied upon" by the claimant. Mass. Gen. Laws ch. 93A, § 9(3). The Neuhoffs' attorneys submitted such a letter to Marvin notifying them of their claims relating to the "defective Marvin doors and windows." The Neuhoffs' claims were described to Marvin as "regarding your unfair or deceptive act or practice of selling defective windows." The act or practice of selling

-15-

defective windows took place in 1991, and any claims relating to such a sale were time-barred by 1996.

The Neuhoffs never asserted a claim in their chapter 93A notification letter regarding deceptive or false promises. Regardless of whether such a claim has merit, it is waived because the Neuhoffs failed to assert such a claim in their notification letter. See Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975)(holding that failure to complain of a specific violation is a bar to suit); Bressel v. Jolicoeur, 609 N.E.2d 94, 98 (Mass. App. Ct. 1993) (holding that related claim not mentioned in the demand letter is waived).

## IV.  Conclusion

For the forgoing reasons, the judgment of the district court is affirmed in part and reversed in part.  We remand for proceedings consistent with this opinion.  Each party shall bear its own costs.

**Affirmed, reversed and remanded**.