**PUERTO RICO ELECTRIC POWER AUTHORITY, Plaintiff,**

v.

**ACTION REFUND, et al., Defendants.**

**Civil No. 05–2302(JP).**

United States District Court, D. Puerto Rico.

Dec. 29, 2006.

Marco A. González, Esq., PHV Gia G. Incardone, Esq., Duane Morris LLP, Newark, NJ, for Plaintiff.

PHV David F. Smith, Esq., PHV W. Clifton Holmes, Esq., Sher & Blackwell LLP, Washington, DC, José E. Alfaro–Delgado, Esq., Condado Astor Bldg., San Juan, PR, for Defendants.

### OPINION AND ORDER

JAIME PIERAS, Jr., Senior District Judge.

The Court has before it Defendants Action Refund's and Stanley K. Wallin's ("Defendants") motion for summary judgment and supporting documents (**Nos. 37, 38, 39, 40**), as well as Plaintiff Puerto Rico Electric Power Authority's ("PREPA") motion in opposition thereto (No. 44). PREPA retained the services of Action Refund in 2004 in order to secure a refund of crude oil overcharges from the U.S. Department of Energy. For its services, Action Refund was to receive compensation amounting to twenty percent of the refund. The parties memorialized the terms of their agreement in an Official Contract and Binder (or "Contract").

PREPA alleges it only entered into the Official Contract and Binder because of misrepresentations made by the Defendants, and therefore claims the contract is void. Defendants counterclaimed, seeking the money they are allegedly owed by Plaintiffs under the Contract. For the reasons stated herein, the Defendants' motion for summary judgment is **GRANTED** as to all of Plaintiff's claims.[1]

### I. MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following facts were stipulated as true and uncontested by the parties at the Initial Scheduling Conference held before the undersigned on July 14, 2006:

A. During the period from August 1973 through January 1981, the U.S. Department of Energy ("DOE") implemented federal regulations governing the pricing and allocation of domestic crude oil and refined petroleum products.

B. In or around 1986, as a result of multi-district litigation originating in the United States Court for the District of Kansas, various producers and sellers of domestic crude oil were found to have engaged in overcharging for crude oil and refined petroleum products in violation of DOE regulations. This litigation

---

1. Plaintiff's complaint is hardly a model in clarity. Though Count I is titled and focuses on seeking a declaratory judgment from the Court due to lack of consideration, Plaintiff also draws from its other counts, namely its fraud and fraud in the inducement counts, to support its arguments. Consequently, the Court here evaluates whether summary judgment is appropriate for each of Plaintiff's claims.

eventually resulted in the 1986 Stripper Well Settlement.

C. As a result of the Stripper Well Settlement and other litigation, the DOE collected the crude oil overcharges from the offending parties and then designed and implemented a system of restitution, whereby a portion of the overcharges could be refunded to the affected end-user consumers.

D. On or about June 30, 1988, PREPA initially applied to the DOE for its portion of the Stripper Well Settlement.

E. By operation of a decision of the DOE, dated October 3, 1997, PREPA was found to have purchased crude oil during the relevant period for use in generating electricity and for other ancillary purposes. PREPA was also found to have been overcharged and to be eligible for a refund in the initial amount of six million nine hundred seventy seven thousand six hundred thirty five dollars ($6,977,635.00).

F. The DOE issued a refund to PREPA in the amount of $6,977,635 in or about November 1997.

G. Stanley Wallin signed the Contract on behalf of Action Refund on September 20, 2004, and Mr. Rafael López–Ares signed Contract on behalf of PREPA on September 21, 2004.

H. Wallin signed the "Power of Attorney" agreement between the parties on September 22, 2004, and Rafael López–Ares of PREPA signed that document on September 27, 2004.

I. On or about October 4, 2004, Defendants completed a one-page DOE form on behalf of PREPA in connection with the crude oil refund. The only information the form requested be provided was the company name, method of payment, mailing address, and Employer Identification Number. The form completed by Defendants refers to PREPA as both Puerto Rico Electric Power and Puerto Rico Electric Power Co.

J. Wallin submitted to DOE, prior to December 31, 2004, the verification documentation and information necessary for PREPA to receive a crude oil refund from DOE.

K. On or about January 28, 2005, Richard A. Cronin, Jr., of the DOE, communicated by letter to PREPA the urgency of submitting verification of information in DOE records on a form identical to the form Defendants allegedly completed on or about October 4, 2004. On or about February 3, 2005, as requested by the DOE, PREPA completed and sent to the DOE the verification form; this was the same form completed by Defendants on or about October 4, 2005.

L. On or about March 28, 2006, PREPA received from the DOE a check in the amount of three million thirty two thousand six hundred seven dollars ($3,032,607.00) for the outstanding federal refund.

M. The DOE has withheld roughly 10% from the amount of all crude oil refunds paid during the first half of 2006, and all claimants may accordingly receive additional refund monies from DOE in the future.

The following material facts are properly supported, and are not in genuine issue or dispute. The Court here exercises its authority under Rule 56(d) to designate these facts as established in the case. Fed. R.Civ.P. 56(d).

A. In a Federal Register notice dated May 21, 2004, the DOE established procedures for making claims in its third round of crude oil refunds.

B. Even if they received refunds previously, DOE required third round claimants to submit information to DOE on or before December 31, 2004. Any claimant that failed to file such form by the deadline would forfeit its right to the third round refund.

C. In January or July 2004, DOE mailed a notice to eligible refund recipients regarding the procedures for the next refund round.

D. In the Contract, PREPA authorized Defendants to act as its representative for claiming petroleum refunds. The Contract also provided that Defendant Action Refund would receive twenty percent of the total amount of refunds received.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial

worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman*, 985 F.2d at 1116.

## III. ANALYSIS

### A. CONSIDERATION

 Plaintiff's allege that the Contract with Defendants is null and void for lack of consideration, or for illicit consideration. Defendants move for summary judgment as to this claim. A contract must have consideration to be enforceable.

*Neuhoff v. Marvin Lumber and Cedar Company*, 370 F.3d 197, 201 (1st Cir.2004). In order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promise or a corresponding benefit to the promisor. *Id.* A contract is made upon a "consideration" when something is done, forborne, suffered, or undertaken by one party at the request of another, which is made the foundation of the promise of that other. Sir William Markby, Elements of Law 307–317 (6th ed.1905). The parties hereto entered into and signed the Contract in September 2004. This Contract specified that, in return for Action Refund securing a crude oil refund on PREPA's behalf, Action Refund would receive twenty percent of the refund. Thus, the Court finds that consideration was present.

▮▮▮ Plaintiff alleges, however, that because Action Refund only had to complete a simple, single form to secure the refund from the DOE, Defendants acted fraudulently in inducing Plaintiff to sign the Contract, and the consideration is not valid. Parties ordinarily have complete freedom of contract, and the courts will not inquire as to the adequacy of the consideration for their contracts. 17A Am. Jur.2d Contracts § 124; *see Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 954 F.Supp. 438, 449 (D.P.R.1996). Once it appears that there existed consideration to support a contract, and in the absence of a statute, courts have traditionally declined to relieve a party from the terms of the contract merely because that party made a bad or uneven bargain. *Id.* (citing *U.S. v. United Shoe Machinery Co. of New Jersey*, 247 U.S. 32, 38 S.Ct. 473, 62 L.Ed. 968 (1918)). However, contracts may be without effect if they contain illicit consideration or defects which would invalidate them according to law. 31 L.P.R.A. §§ 3432, 3511; *see In re Newport Plaza Associates, L.P.*, 985 F.2d 640, 649 (1st Cir.1993) (holding that "[i]f practiced parties to commercial transactions bargain for, and receive, consideration that they deem satisfactory and that the law regards as substantial, it is not a court's role, absent fraud or other exceptional circumstances, to evaluate the relative adequacy of the consideration or to reweigh the soundness of the parties' judgments"). Because Plaintiff also alleges fraud in its complaint, and fraud is relevant to Plaintiff's consideration claim, the Court will now turn to whether Defendants engaged in fraud and induced Plaintiff to sign the Contract, in which case it would be invalid according to law.

## B. FRAUD

Under Puerto Rico contract law, fraud which affects a contracting party is commonly referred to as "dolo" or deceit. 31 L.P.R.A. § 3408. Deceit can be manifested in the formation of a contract where a party obtains the consent of another through deceptive means. *See* 31 L.P.R.A. §§ 3404–3409. Deceit exists when by words or insidious machinations on the part of one of the contracting parties, the other party is induced to execute a contract which without them he would not have made. 31 L.P.R.A. § 3408. Deceit may give rise to the nullification of a contract only if it is serious. 31 L.P.R.A. § 3409.

▮▮▮ The presumption is in favor of good faith and honesty and against fraud, so the party who alleges fraud must prove its existence with uncontroverted and unchallengeable facts. *In re Las Colinas, Inc.*, 294 F.Supp. 582, 598–599 (D.P.R. 1968) (citing *Bamberger v. Schoolfield*, 160 U.S. 149, 16 S.Ct. 225, 40 L.Ed. 374 (1895)). The party alleging fraud must establish the following four elements: (1)

the intent to defraud; (2) reliance on the fraudulent acts; (3) the false representations used to consummate the fraud; and (4) that the fraud was consummated by virtue of such representations. *Id.* Besides the burden of proof, the party alleging the fraud must produce evidence which is "strong, clear, unchallengeable, convincing and conclusive, since a mere preponderance of the evidence is not sufficient to establish the existence of fraud in our jurisdiction." *In re Las Colinas, Inc.,* 294 F.Supp. at 598–599; *see Monclova v. Financial Credit Corp.,* 83 P.R.R. 742 (1961); *Calzado v. Carrero,* 15 P.P.R. 340 (1909); *Ana Maria Sugar Co. v. Castro,* 28 P.R.R. 225 (1920); *Nunez v. Rodriguez,* 51 P.R.R. 622 (1937); *Mario Mercado E Hijos v. Olivieri,* 60 P.R.R. 855 (1942). Conclusions, conjectures, and suppositions or suspicions are not of themselves sufficient to substantiate an allegation of fraud. *In re Las Colinas, Inc.,* 294 F.Supp. at 599.

 Plaintiff PREPA alleges that Defendant Wallin misrepresented to Plaintiff that he had "some special skill" or "expertise" in obtaining crude oil refunds, and that failure to retain Wallin "would or could" result in delay in receiving the refund. PREPA alleges that Wallin misrepresented that his retention could expedite PREPA's receipt of the refund, and would assure that PREPA's entitlement to this money was secure. PREPA alleges that Wallin made these representations despite the fact that he knew that PREPA's right and entitlement to the refunds had already been established, and that no additional work or services were needed for PREPA to receive the refund.

Defendant Wallin, in turn, alleges he does indeed have expertise in securing crude oil refunds from the DOE. Wallin has spent many hours monitoring the DOE website and other public issuances to determine whether refunds would be issued and what procedures would be required to obtain such refunds. Since 1994, Wallin has successfully assisted roughly 100 entities in obtaining refunds. In July or August of 2004, Wallin contacted PREPA and offered to assist PREPA in obtaining its refund. Defendants allege that Plaintiff PREPA took six weeks to review and evaluate Defendant Wallin's proposed contract, and PREPA requested additional information about Wallin and his company, Action Refund, which Wallin provided to PREPA. PREPA and Wallin signed the Contract. In the Contract, Defendant Action Refund agreed to act as representative to PREPA in the claim for petroleum refunds in exchange for Action Refund's receipt of twenty percent of the total amount of refunds received. Defendants allege that they performed the work called for under the Contract, which included submitting PREPA's claim to DOE on October 4, 2004. Defendant Wallin further alleges that he followed up on the submission with numerous telephone calls and e-mails to ensure the verification has been received and was reflected in DOE's database. Defendants allege that based on their actions, PREPA received a refund check on March 28, 2006.

Defendant Wallin also alleges that PREPA's entitlement to a third-round refund was not established at the time the Contract was executed. As of September 2004, PREPA had not claimed its third-round refund from DOE. As set forth by Steven Goering, a DOE employee, in his deposition, DOE had not received any forms from PREPA before December 31, 2004, other than the form submitted by Wallin.

The Court holds that no genuine issue exists as to whether Defendants acted with intent to defraud, or made false representations which were used to consummate fraud. Plaintiff's only arguments are as-

sertions which are unsupported by fact and challenged by Defendants. Because claims of fraud must be substantiated with evidence that is strong, clear, unchallengeable, convincing and conclusive, the Court grants summary judgment as to Plaintiff's fraud claims and claim for illicit consideration.

### C. UNCONSCIONABLE

■ Plaintiff's final allegation is that the Contract was unconscionable because it was one-sided and its terms were unreasonably favorable to Defendants. Specifically, Defendants were to receive twenty percent of the refund for performing absolutely no work at all. Procedural unconscionability encompasses "not only the employment of sharp practices and the use of fine print and convoluted language, but a lack of understanding and an inequality of bargaining power." 1 Farnsworth § 4.28, at 506–507 (footnotes omitted). As set forth above, Plaintiff signed the Contract after six weeks of review, and after requesting and receiving additional documents from Defendants. Plaintiff also signed the Contract knowing and agreeing that Defendants would be entitled to twenty percent of any refund received. As such, procedural unconscionability is not present here. Substantive unconscionability is not present either. As set forth in Uncontested Facts I. and J., Defendants did indeed perform work under the Contract and on behalf of PREPA by completing and submitting the refund claim to DOE. Plaintiff in turn received a refund from the DOE. Therefore, it does not appear that the Contract's terms were unreasonably favorable to Defendants.

In light of these uncontested facts, and the fact that the Court has granted summary judgment as to the fraud claim, no further analysis is necessary to determine that summary judgment is appropriate for Plaintiff's unconscionability claim. The Court grants summary judgment as to this claim as well.

### IV. CONCLUSION

For the reasons stated herein, the Court will enter judgment dismissing with prejudice Plaintiff's claims of lack of or illicit consideration, fraud, and unconscionability. Accordingly, the only claim which remains before this Court is Defendants' counterclaim for payment under the Contract.

**IT IS SO ORDERED.**