Greco, P.J.
The plaintiff, Marie Hurley (“Hurley”), alleged that she bit into a chocolate chip cookie while visiting her mother at the assisted living facility owned and operated by the defendant, Sunrise Senior Living Management, Inc. (“Sunrise”), and that when she did so, she sustained injuries to her mouth and teeth from a hard object in the cookie. She sued Sunrise as well as the manufacturer of the dough used by Sunrise to make the cookie, and the company that distributed the dough from the manufacturer to Sunrise. The distributor and manufacturer reached settlements with Hurley, and the case proceeded to a jury-waived trial against Sunrise. Hurley’s complaint, as amended, contained counts for negligence, breach of warranty, and “product liability.” After trial, the judge found that Sunrise was not “negligent in the baking or placement of the cookie” in Sunrise’s facility; but ordered judgment in favor of Hurley on the breach of warranty claim.[3] Sunrise appealed, arguing that since Sunrise was not a merchant and since it did not sell the cookie to Hurley, it could not be found liable for breaching the warranty of merchantability
The facts found by the trial judge are largely undisputed. Hurley’s eighty-seven year old mother was a resident at Sunrise. For a fee, Sunrise provided her with housing, food, and support services. At the facility, there was an “industrial kitchen” where food was prepared and a dining room where meals were served. Guests and family members could also eat in the dining room, but either they or the residenf s account would be charged. There was a separate area in the facility, called the Bistro *98 Bar (“Bistro”), where cookies, fruits, and other desserts were available to both residents and guests at no cost. However, the cost of such items was factored into the overall fees paid by the resident. As the trial judge found, the Bistro “was provided to create a home-like ambiance.” At times, entertainment was also provided. On the day of Hurley's visit, she was in the Bistro. When she bit into a chocolate chip cookie offered there, she felt contact with what turned out to be two inch-long, hard objects that, as evidenced by the photographs in the record, looked similar to a pit one might find in a piece of fruit or a vegetable. As a result, Hurley damaged a tooth and prior dental work, which resulted in dental expenses and pain and suffering.
The cookies offered in the Bistro were not made “from scratch” by Sunrise. Instead, Sunrise received from the distributor ‘frozen cookie dough” that had been prepared by the manufacturer. Along with the frozen dough, Sunrise received rather simple baking instructions. While Sunrise had an “industrial kitchen” to cook meals, the cookies were made in a toaster oven.
Based on this evidence, the trial judge, citing Phillips v. Town of West Springfield, 405 Mass. 411 (1989), ruled that “Sunrise was a seller of the cookie, as the provision of food and snacks by it to its residents, and their guests and family was an integral component of the assisted living concept”; that Hurley “would not likely expect a chocolate chip cookie to have one inch pits in it”; and that “pits were foreign to a chocolate chip cookie.”
As provided in the Uniform Commercial Code, G.L.c. 106, §2-314(1), “a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.” “Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions.” Hagland v. Philip Morris Inc., 446 Mass. 741, 746 (2006), quoting Cigna, Inc. v. Oy Saunatec, Ltd., 241 F.3d 1, 15 (1st Cir. 2001). The Code defines a merchant as “a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction.” G.L.c. 106, §2-104(1). However, “the fact that a person is not in the business of buying and selling a particular kind of goods does not mean that he is not a merchant with respect to such goods.” 1 R.A. ANDERSON, UNIFORM COMMERCIAL CODE §2-104:14 (3d ed. 1981), quoted in Ferragamo v. Massachusetts Bay Transp. Auth., 395 Mass. 581, 588-589 (1985). “The only apparent sine qua non of merchant status... is that the sale at issue not be ‘an isolated sale of goods.’” Id. at 589, quoting G.L.c. 106, §2-314 comment 3. A “sale” has been defined as “the transfer of property from one person to another for a consideration of value.” E.I. duPont de Nemours & Co. v. Kaufman & Chernick, Inc., 337 Mass. 216, 219-220 (1958), quoting Arnold v. North Am. Chem. Co., 232 Mass. 196, 199 (1919). Section 2-314(1) further provides that the “serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.”
There was certainly evidence in this case to support the trial judge’s findings that the “pits” that caused Hurley’s injury were foreign substances not naturally found in a chocolate chip cookie, and that she should not have reasonably expected them in such a cookie. See Phillips, supra at 412. Thus, the main issues before us are whether Sunrise was a merchant and, to a greater extent, whether the cookie was *99 sold to Hurley.
1. Merchant. Sunrise runs an assisted living facility. Common sense dictates the conclusion that having dining areas within the building is a necessity for Sunrise’s elderly residents. It also can be inferred that Sunrise has the necessary expertise to provide desserts in both its main dining room and the Bistro. Moreover, the cookies were not purchased ready to eat. While the cookies could be prepared in a toaster oven as opposed to the industrial kitchen, Sunrise had to bake them, and not much expertise or skill was required to do that. There was no evidence that defects in the manufacturer’s baking instructions played any role in Hurley’s mishap, and there was no evidence from which it could be inferred that the provision of cookies to Hurley was an isolated event. Accordingly, Sunrise qualifies as a merchant of the food it provides.
2. Sale. Whether the cookie Hurley bit into was sold to her is a closer question. The cookie was certainly free in the sense that Hurley did not directly give Sunrise value in the form of money on that day in order to eat that cookie. While there do not seem to be any Massachusetts cases directly on point, some Federal cases are helpful.
In Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197 (1st Cir. 2004), the plaintiff entered into a contract with Marvin Lumber for the installation of several windows. Seven years later, Marvin Lumber replaced, free of charge, many of the windows that had become rotten. When the windows that were replaced also became rotten a year later, the plaintiff filed an action against Marvin Lumber for breach of the implied warranty of merchantability. In finding in favor of Marvin Lumber, the First Circuit concluded that the replacement windows were “more akin to a gift and that thus there was no implied warranty on the windows.” Id. at 205. The Court went on to state the following:
Some courts have held that a good that is given for free can be a ‘sale.’ Such holdings, however, were made in cases where there was a ‘combined sale of both [a free good] and [a purchased good] for a single price.’ In such a situation, the free good is provided in a package with the paid for good. In Neuhoff’s situation, the replacement windows were not coupled with any other transaction. They were provided in 1998, seven years after any sale transaction between the Neuhoffs and Marvin took place” (citations omitted).

Id.

On the other hand, in Levondosky v. Marina Assocs., 731 F. Supp. 1210 (N.J. 1990), one of the cases cited by the First Circuit in Neuhoff, the plaintiff was gambling in the defendant’s casino. When the plaintiff ordered an alcoholic beverage, it was served free of charge. He alleged that he suffered an injury when “he swallowed a few thin chips of glass from the rim of the glass in which the beverage was served.” Id. at 1211. The court noted that the defendant “was offering complimentary drinks to its patrons. Nonetheless, it was not offering these drinks out of any sense of hospitality or charity. Defendant runs a casino, and the complimentary drinks were offered as an incentive to patrons to gamble, and therefore enhance defendant’s business.” Id. at 1212.
*100 While we hesitate to equate an assisted living facility with a casino, the situation in Levondosky is more analogous to the case before us. The cookie was eaten and the injury occurred on the same day the cookie was offered. Both the defendant casino and Sunrise provided services to its residents and guests,[4] the casino provided hotel accommodations, and Sunrise provides general living assistance. However, the injuries in both cases had nothing to do with those services. In Levondosky, casino employees mixed the drink, put it in a glass, and gave it to the plaintiff. In the case at bar, Sunrise employees baked the cookies from the batter provided and made them available to its residents and their guests. More significant, however, are the motivations for providing something free. The casino wanted its guests to gamble because that is the way it makes money. It received value for such “free” drinks to the extent that the drinks motivated the customers served to remain in the casino, gamble, and potentially lose. Sunrise receives value for the cookies to the extent that family members are made to feel that their loved ones are in a pleasant and caring facility, that they should remain there, and, of course, that they keep paying the fees. Moreover, these cookies are, in reality, paid for in money. The fees paid by the residents, or perhaps by members of their family, allow the facility to run the Bistro and provide “free” items. It is somewhat akin to “free” food provided by a college at parents’ weekend; the parents do not pay for the food, but they go home and pay the tuition bill.
In these circumstances, there was no error. Accordingly, the judgment of the trial court is affirmed.
So ordered.

 The judgment was in the amount of $6,000.00. The manufacturer and distributor had previously settled the claims against them with Hurley, and each paid her $1,500.00. Accordingly, judgment was entered against Sunrise in the amount of $3,000.00, plus interest and costs. Cross claims for contribution and indemnification filed by the manufacturer and distributor were dismissed, and it is agreed by all the parties that no issues concerning such contribution and indemnification are before us on this appeal.

 Compare England v. Sanford, 561 N.Y.S. 2d 228 (1990), where the plaintiff alleged that she was injured as a result of eating the food at a party catered by the defendant. The court noted that “[fjrom a pragmatic point of view, there is little if anything to distinguish defendant’s relationship to the guests of this party from a restaurant owner’s relationship to his paying customers. No less in one instance than the other does the consumer of food have a reasonable expectation that the food being served is safe to eat” (citations omitted). Id. at 228-229.